PETERS, C. J., WALTON, DANFORTH, EMERY and HASKELL, JJ., concurred.

———————

GEORGE A. EMERY, appellant from decree of judge of probate, Cumberland county, disallowing the will of Esther Hunt, formerly Esther Doughty, deceased.

Cumberland.    Opinion January 22, 1889.

*Will.    Feme sole.    Revocation by marriage.*

The will of a *feme sole* is not revoked by her marriage.    The rule of the common law, to the contrary, is not now in force, in this state.

FACTS AGREED.  The case was submitted to the full court, upon a statement of the facts, to determine the law as to the effect of the marriage of the testatrix, Esther Hunt, formerly Esther Doughty, upon the validity of her will executed before marriage.

It appeared, that the testatrix was a widow at the time she executed the will ; that she subsequently married, but no children were born of the subsequent marriage ; that her second husband deceased before the death of the testatrix ; and that at the time of the decease of the testatrix, when said will would take effect, if ever, she was single and unmarried.    Will dated Nov. 16, 1878. The probate court decreed that said instrument be not approved and allowed as the last will and testament of said deceased.

*Frank and Larrabee*, for appellant.

In the Massachusetts cases, *Swan* v. *Hammond*, 138 Mass. 45 ;

*Blodgett* v. *Moore*, 141 Id. 75; and *Nutt* v. *Norton*, 142 Id. 242; where the court have decided, not without hesitation, that the marriage of a woman, but not of a man, revokes a will previously made, the husband survived and his rights were affected.

Counsel cited: *Hoitt* v. *Hoitt*, 63 N. H. 475; *Morton* v. *Onion*, 45 Vt. 145; *In re Tuller*, 79 Ill. 79 (22 Am. Rep. 164); *Noyes* v. *Southworth*, 55 Mich. 173 (54 Am. Rep. 359); *Webb* v. *Jones*, 36 N. J. Eq. 163; *In re Ward*, (Wis.) 35 N. W. Rep. 731; *Fellows* v. *Allen*, 60 N. H. 439; *In re Polly Carey*, 49 Vt. 145.

*H. R. Virgin*, for contestant.

The will of a *feme sole* is revoked by subsequent marriage. Common law since 1589. *Forse & Hembling's case*, 4 Co. Rep. 60, 61, b.; *Hodsden* v. *Lloyd*, 2 Bro. Ch. 534; *Doe, dem. Hodsden* v. *Staple*, 2 T. R. 684; *Long* v. *Aldred*, 3 Addams, 48; 2 Jar. Wills, 129; 1 Red. Wills, 21, 22, 23; 4 Kent. Com. 527, 598; Toller's Exrs. 19; *Shaw* v. *Hammond*, 138 Mass. 45, 46.

Rule promulgated in twenty states, by statute, and prevailed in England until statute of 7 Will. IV., and I Vict., c. 26, § 18.

Maine statutes, in effect, are identical with those of Mass. They can not be changed by construction. *Currier* v. *Phillips*, 12 Pick. 226; *Swan* v. *Hammond*, *supra*, and re-affirmed in *Nutt* v. *Norton*, 142 Mass. 242, and cases there cited.

Incorporating the clause, relative to implied revocations into R. S., c. 74, § 3 is an express enactment of this common law rule. It is for the court to declare what the law is, not to repeal or annul it. The language of a statute is not to be enlarged or limited by construction. *Currier* v. *Phillips*, *supra*.

WALTON, J. The question is whether the common-law rule that, the will of a *feme sole* is revoked by her marriage, is now in force in this state. We think it is not. The rule was an outgrowth of the doctrine that the marriage of a *feme sole* destroyed her testamentary capacity. After her marriage she could neither make nor revoke a will. A will already made, if allowed to remain valid, would make a permanent disposition of her property. This would be contrary to the very essence and nature of a will. It would cease to be ambulatory. It was therefore resolved that

the marriage of a *feme sole* should, by operation of law, revoke all existing testamentary dispositions of her property. But, in this state, the marriage of a *feme sole* does not now destroy her testamentary capacity. In this particular the common law is not now in force. It has been abrogated by the legislature. A married woman can now make, or alter, or revoke a will, as fully and as freely as if she were not married. Why, then, should her marriage revoke a pre-existing will? We think it should not. *Cessante ratione legis, cessat ipsa lex.* Reason is the soul of the law, and when the reason of any particular law ceases, so does the law itself. In England it is now enacted that the marriage of either a man or a woman shall revoke a pre-existing will, unless it is executed under a power of appointment. In New York they have a statute which declares in express terms that the marriage of a woman shall revoke a pre-existing will. In Massachusetts they have a statute which, as construed by the court, has the same effect. Similar statutes exist in several other states. Where such statutes exist, the question we are now considering cannot arise. In other states, where the testamentary laws and the rights and powers of married women are similar to those now existing in this state, it has been held that the marriage of a *feme sole* will not revoke a pre-existing will. It is said in a New Hampshire case that when the incapacity of a married woman to make a will is removed, no reason remains why her will, made before her marriage, should be thereby revoked. *Morey* v. *Sohier*, 63 N. H. 507, (2 N. E. Rep. 274.) And see *Fellows* v. *Allen*, 60 N. H. 439; *Webb* v. *Jones*, 36 N. J. Eq. 163. *Ward's Estate*, (Wis.) 35 N. W. R. 731. *Carey's Estate*, 49 Vt. 236. Our statutes recognize the fact that a will may be revoked by operation of law from a change in the condition or circumstances of the maker (R. S., c. 74, § 3), but they are silent as to what the changes or circumstances are, which shall have that effect. If the marriage of a *feme sole* now, as formerly, destroyed her testamentary capacity, the change in her condition and circumstances would now, as then, also destroy the validity of an existing will. But such is not now the effect of a marriage. In this state, a *feme covert* can make or revoke a will as freely as a *feme sole* :

and the reason no longer exists for holding that the will of a *feme sole* will be revoked by her marriage. It will not be. The decree of the probate court holding the contrary was erroneous, and must be reversed.

*Decree reversed.*

PETERS, C. J., DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.