IN THE

# SUPREME JUDICIAL COURT

OF THE

# STATE OF MAINE.

88 17
89 105

OLIVE O. ROBINSON, appellant from decree of JUDGE
OF PROBATE.

Androscoggin.    Opinion May 14, 1895.

*Tenants by entirety.    Husband and Wife.    Will.    R. S., c. 61 ;
Stat. 1844, c. 117.*

The rule of the common law, by which a devise or grant to husband and wife made them tenants by the entirety, no longer prevails in this State since the Stat. of 1844, c. 117.

Tenancy by the entirety had its origin in the marital relation, and was founded on the legal fiction of the absolute oneness of husband and wife. Modern legislation has abrogated this theoretical unity, and secured to the wife a distinct and separate right to acquire and enjoy property to her sole use and benefit, and free from the control of her husband.

By the residuary clause in his will, a testator gave his daughter and her husband the residue and remainder of his estate " in equal shares and proportions, and so to their respective heirs and assigns forever." The husband died before the testator leaving a minor son and wife surviving. *Held :* that the daughter does not take the whole as tenant in the entirety, but takes only one-half of the residuary estate, and that the other half should be distributed among the heirs of the testator.

ON EXCEPTIONS.

The case appears in the opinion.

*N. and J. A. Morrill*, for appellant.

At common law a devise or grant to husband and wife created a tenancy by the entirety and the survivor took the whole, and

VOL. LXXXVIII.    2

this rule has been adopted in this state, notwithstanding R. S., c. 73, § 7. *Harding* v. *Springer*, 14 Maine, 407. So recognized in *Stetson* v. *Eastman*, 84 Maine, 366.

And in those states where the greatest advances have been made by statute and by judicial decision in abolishing joint tenancies, tenancy by the entirety has been generally preserved, notwithstanding acts enlarging the rights of married women. *Pray* v. *Stebbins*, 141 Mass. 219; S. C. 55 Am. Rep. 462; *Bertles* v. *Nunan*, 92 N. Y. 152; S. C. 44 Am. Rep. 361; *Rogers* v. *Benson*, 5 Johns. Ch. 431; Note, Law Ed.; *Marburg* v. *Cole*, 49 Md. 402; S. C. 33 Am. Rep. 266, Note 269; *Buttlar* v. *Rosenblath*, 42 N. J. Eq. 651: S. C. 59 Am. Rep. 52; *Carver* v. *Smith*, 90 Ind. 222; S. C. 46 Am. Rep. 210; *Hulett* v. *Inlow*, 57 Ind. 412; S. C. 26 Am. Rep. 64, Note; see also note 10 Am. St. Rep. 9; *Baker* v. *Stewart*, 40 Kan. 442; S. C. 10 Am. St. Rep. 213; *Harrison* v. *Ray*, 108 N. C. 215; S. C. 23 Am. St. Rep. 57.

Only three states in which the law of tenancies by the entirety has been recognized, seem to hold a contrary view — Iowa, Illinois and New Hampshire.

If we may assume, without discussion, that it was the intention of the testator. to create a tenancy in common by the residuary clause of his will, and that. the words " in equal shares and proportions" were intended to make certain that intention, still that intention must be governed by "the fundamental laws which establish and secure the rights of property." *Ramsdell* v. *Ramsdell*, 21 Maine, 293.

We contend upon reason and authority that such an intention cannot control the rule of a tenancy by the entirety and so convert the estate into a tenancy in common; that husband and wife cannot at common law, by any words in a grant to them during coverture, be made either joint tenants or tenants in common, for the reason that according to the principles of the common law, they are incapable of so taking, husband and wife being considered as one person.

An estate by entirety is not founded upon the notion of a joint tenancy, but upon the marital relation and upon the legal theory

of the absolute oneness of husband and wife. *Stelz* v. *Shreck,* 128 N. Y. 263 ; S. C. 26 Am. St. Rep. 475.

Counsel also cited : *Dias* v. *Glover*, Hoff. Ch. 71 ; *Bram-berry's appeal*, 156 Pa. St. 628 ; S. C. 36 Am. St. Rep. 64 ; *Jackson* v. *Stevens*, 16 Johns. 115 ; *Barber* v. *Harris*, 15 Wend. 617 ; *Den* v. *Hardenbergh*, 5 Halsted, 42 ; S. C. 18 Am. Dec. 371, and note p. 384, in which it appears that Preston on Est. and Abst. is not supported by any case prior to the views he holds.

Same rule applies to personal property. 3 Jar. Wills, 2, citing *Atchison* v. *Atchison*, 11 Beav. 485 ; *Pike* v. *Collins*, 33 Maine, 38 ; *Bramberry's appeal, supra* ; *Draper* v. *Jackson*, 16 Mass. 480 ; *Craig* v. *Craig*, 3 Barb. Ch. 77, 104 ; *Cowper* v. *Scott*, 3 P. Wms. 121.

Was the intention of the testator to give the residuary estate to Mr. and Mrs. Robinson collectively, and not to give it to them in case Mr. Robinson lived, but to give it differently in case he died ? The testator could not have intended to say, "I will give this property to my daughter, Olive, and her husband, and thus each will have the benefit derived from the possession of the share by the other, *but* in case Judyer dies before my death, I will leave it so my heirs will take one-half." Such an inten-tion would be self-contradictory ; the second part would be largely repugnant to the first. The fact that the testator in this will made provision for his other children and the issue of deceased children helps the argument that he did not intend for them to have more in any event. *Mann* v. *Hyde*, (Mich.) N. W. Rep. 78.

SITTING : PETERS, C. J., WALTON, HASKELL, WHITEHOUSE, WISWELL, JJ.

WHITEHOUSE, J. This is an appeal from the decree of a Probate Court.

The executor of the will of Charles P. McKenny filed a petition under the provisions of R. S., c. 65, § 27, as amended by chapter 49 of the laws of 1891, asking for an order of distribu-

tion which would protect him in paying out the residue of the estate in his hands. This involved a construction of the following residuary clause in the will.

"The residue and remainder of all my estate of which I may die seized and possessed, both real and personal, not herein otherwise disposed of, I give, bequeath and devise the same to my son-in-law, Judyer Robinson, and my daughter Olive H. Robinson, wife of the said Judyer Robinson, in equal shares and proportions and so to their respective heirs and assigns forever."

Judyer Robinson died before the death of the testator, leaving a minor son, and a wife who is the appellant and the same person called Olive H. Robinson in the will.

The decree of the Judge of Probate required one-half of the residuary estate to be paid to the appellant and the other half to be distributed among the heirs of the testator; and this decree was affirmed by the justice presiding in the Supreme Court of Probate. The case comes to this court on exceptions to that ruling.

It is the opinion of the court that the ruling was correct and that the exceptions must be overruled.

It is contended by the learned counsel for the appellant that the residuary clause created a tenancy by the entirety, and that Olive O. Robinson is entitled to the entire residue estate by right of survivorship. It is not controverted that the language employed by the testator must be construed as creating a tenancy in common if Judyer Robinson and Olive O. Robinson had not been husband and wife. (*Stetson* v. *Eastman*, 84 Maine, 366.) But it is argued that the rule of the common law by which a devise or grant to husband and wife constituted them tenants by the entirety, the survivor taking the whole, has never been changed in this state by the abolition of joint tenancies or the legislation enlarging the rights of married women respecting the ownership of property. It is accordingly contended that if the words "in equal shares and proportions" found in the residuary clause were advisedly employed for the purpose of making certain the intention of the testator to create a tenancy in common, this intention however clearly expressed cannot be

allowed to prevail against the early rule of the common law that husband and wife, being regarded as one person in law, are not competent to take either as joint tenants or as tenants in common under any form of grant or devise in fee made to them during coverture.

We are unable to concur in this view.  The rule of the common law undoubtedly existed as claimed by the appellant.  It is thus stated in 2 Black. Com. 181:  "If an estate in fee be given to a man and his wife, they are neither properly joint-tenants nor tenants in common; for husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seized of the entirety, *per tout et non per my*; the consequence of which is that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor."  And it is true that prior to the act of 1844, c. 117, and subsequent legislation in this State securing to the wife the enjoyment of her separate estate, this common law rule was recognized by our court. *Greenlaw* v. *Greenlaw*, 13 Maine, 186; *Harding* v. *Springer*, 14 Maine, 407.  But it is worthy of remark that no recognition of it or reference to it can be found in the cases reported in this State since the act of 1844, entitled "An act to secure to married women their rights in property."

A tenancy by entirety is *sui generis*.  The right of survivorship gives it an apparent resemblance to joint tenancy, but as already seen it differs from a joint tenancy in important particulars.  All the authorities agree that it had its origin in the marital relation and was founded upon the legal fiction of the absolute oneness of husband and wife.  At the common law the legal existence of the wife was merged in that of her husband.  Her legal identity was suspended or held in abeyance during the existence of the marriage relation.  Substantially all her property was vested in the husband during coverture and her legal position was little better than that of a menial to her husband.  Being but one person in the eye of the law, it was considered that they could not consistently have separate and conflicting property rights.  Hence the rule that property con-

veyed to them during coverture should be held as an estate by entirety with the right of survivorship.

But the universal tendency of modern legislation has been to abrogate this theoretical unity of husband and wife, to recognize and maintain the legal identity of the wife and secure to her a distinct and separate right to the acquisition and enjoyment of property. By the law of this State, "A married woman of any age may own in her own right real and personal estate acquired by descent, gift or purchase; and may manage, sell, convey and devise the same by will without the joinder or assent of her husband." Since the act of 1844 above named, a husband by marriage acquires no right to any property of his wife. "She may receive the wages of her personal labor, not performed for her own family, maintain an action therefor in her own name and hold them in her own right against her husband or any other person." She is liable for her debts and torts and her property may be taken on execution therefor as if she were sole. She may prosecute and defend suits at law or in equity in her own name without the joinder of her husband, for the preservation and protection of her property and personal rights, as if unmarried. R. S., c. 61.

It is manifest that these statutes have wrought great modifications and radical changes in the relative property rights of husband and wife. In contemplation of law they are no longer one person, and their interests in property are no longer identical but separate and independent. Under these statutes the wife is invested with greater privileges and weighted with greater responsibilities and liabilities than before. The rule of the common law creating estates by entirety is irreconcilable with both the letter and the spirit of these statutes. It never rested upon a rational or substantial groundwork. It had its origin in feudal institutions and social conditions which were superseded centuries ago by the more enlightened principles of a progressive civilization. It is now repugnant to the American idea of the enjoyment and devolution of property and to the true theory of the marriage relation. "The reason of the law," says Lord Coke, "is the life of the law; and *cessante ratione*

*lex ipsa cessat.*" The fictitious basis of this rule having been removed the rule itself must fail. To declare that there is no authority in the court to effectuate a clearly expressed and unmistakable intention of a grantor or testator, against such an antiquated and exploded dogma, would be a poor tribute to the creative power of the law and the original conceptions of justice in modern courts. The common law would ill deserve its familiar panegyric as the "perfection of human reason," if it did not expand with the progress of society and develop with new ideas of right and justice. "Considering the influence of manners upon law," says Chancellor Kent, "and the force of opinion which is silently and almost insensibly conducting the course of business and the practice of our courts, it is impossible that the fabric of our jurisprudence should not exhibit deep traces of the progress of society as well as of the footsteps of time."

· These views are sanctioned by approved text-writers and courts of the highest respectability in England as well as in this country.

In his "Treatise on Estates," Mr. Preston makes the confident assertion, based upon his own cultivated reason rather than upon reported cases at that time, that : " In point of fact, and agreeable to natural reason, free from artificial deductions, the husband and wife are distinct and individual persons ; and accordingly when lands are granted to them as tenants in common, thereby treating them without any respect to their social union, they will hold by moieties as other distinct and individual persons would do." 1 Preston Est. 132. This is cited as authority for the following statement in 4 Kent, Com. 411 : "It is said, however, to be now understood that husband and wife may, by express words, be made tenants in common by a gift to them during coverture."

In his note to 2 Black. Com. 181, Judge Sharswood says : "But when an estate is conveyed to a man and woman who are not married together, and who afterwards intermarry, as they took originally by moieties, they will continue to hold by moieties after the marriage. There is nothing, therefore, in the relations of husband and wife which prevents them from being

tenants in common.   There are great opinions in favor of the position that husband and wife may by express words be made tenants in common."   So in 1 Washburn on Real Prop. 444, the author says : " It is always competent however, to make husband and wife tenants in common by proper words in the deed or devise by which they take, indicating such an intention."

In *Clark* v. *Clark*, 56 N. H. 105, it was held that a statute in that state enlarging the rights of married women, practically abolished tenancies by entirety between husband and wife ; and the legal unity of husband and wife, as respects the holding of property and making of contracts by the wife, was obliterated.

In *Cooper* v. *Cooper*, 76 Ill. 57, it was held that under the " Married Woman's law " of 1861 in that State, an act having a scope and purpose similar to our own above cited :   "No reason can be perceived and none is suggested why a married woman should not hold property thus acquired in fee, and as a tenant in common with her husband, precisely as she might with any other person."

In *Hoffman* v. *Stigers*, 28 Iowa, 307, the court say :   "If no contrary intent is expressed in the conveyance to them or the instrument under which they hold, the husband and wife take as tenants in common, and not in entirety.   At common law they were so completely and essentially one that they could not take by moieties. . . .  But the doctrine always stood upon what was little more than the merest fiction ; and as this by our legislation has measurably given way to theories and doctrines more in accord with the true and actual relations of husband and wife, the rule itself must be abandoned."   See also *Wilson* v. *Fleming*, 13 Ohio, 68 ; *Whettlesey* v. *Fuller*, 11 Conn. 337 ; *In re Dixon, Byram* v. *Tull*, 42 Law Rep. ( Ch. Div. 1889,) 306 ; *Warrington* v. *Warrington*, 2 Hare, 54.

Under the residuary clause in the case at bar, the appellant took only a moiety of the residue of the estate.   As Judyer Robinson died before the testator, the devise and bequest to him lapsed, and the moiety of the residue which he would have taken if he had survived descended to the heirs of the testator.

*Exceptions overruled.*