FAY M. BARNHARD *v.* HOWARD J. BARNHARD

5-5807                                        477 S.W. 2d 845

Opinion delivered March 20, 1972

*Cockrill, Laser, McGehee, Sharp & Boswell,* for appellant.

*House, Holmes & Jewell,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant asks that we reverse a decree denying her petition for modification of agreement for the payment of child support entered into in a divorce proceeding she brought against appellee. We find no error in the holding of the chancery court, so we affirm the decree.

Appellant is an anesthesiologist. Her annual income at the time of the divorce was $42,000. Appellee is Chairman of the Radiology Department at the University of

Arkansas Medical Center. He was earning between $20,000 and $25,000 annually. The parties had three children, aged 17, 15, and 14. They owned a dwelling house. Appellant testified that she had been contemplating divorce for 10 to 15 years. In 1969, when her husband returned home from a trip on which she did not accompany him, she told him that she had made up her mind to proceed with a divorce suit. She consulted the attorney who later filed the divorce suit in November of that year. After her initial visit to this lawyer, she consulted with him, both with and without her husband being present. It seems to have been agreed between the parties that negotiations would be carried on toward settlement of property rights, alimony and child support without any other attorney's participation. An agreement was reached and a formal written document executed by the parties on January 29, 1970. On December 29, 1969, appellant, through the attorney consulted, had filed a divorce complaint alleging indignities to the person as grounds. She also alleged that the parties desired a joint custodial arrangement for the children on terms to be mutually agreed upon, giving due considerations to the desires of the children.

A decree of divorce was entered on the day following the execution of the agreement by the parties upon appellee's default. The decree made no provision for child support or for property division, and did not incorporate the agreement. It did mention that the parties had made a joint child custody arrangement, and the court approved that arrangement.

The preamble to the agreement recites the mutual desire of the parties to reach an accord in order to avoid the expense, inconvenience and embarrassment of litigation. The agreement, in essence, provided:

1. For the present, the children were to reside with the father, with visitation and periodic custody in Fay M. Barnhard at reasonable times and intervals to be determined by the parties, giving due weight and consideration to the preferences expressed by the children.

2. Until there was a change of circumstances, Fay M. Barnhard was to pay her ex-husband $500.00 per month as child support.

3. Appellant was to claim the daughter Ann as a dependent for income tax purposes and appellee was to claim the other two children.

4. Each party was to maintain specific amounts of life insurance.

5. Fay M. Barnhard was to convey her equity in the parties' residence to her ex-husband which "represents a contribution of Six Thousand and 00/100 ($6,000.00) toward the expense of a college education for the children." Any additional contribution of appellant was specifically made voluntary on her part.

6. Other provisions related to the division of personal property including a $10,000.00 savings account, certain stocks and bonds, automobiles, paintings, library, household effects and furnishings and a stamp collections. (The value of none of the items, except the savings account, was given).

On August 11, 1970, appellant filed her petition for modification of the agreement, seeking relief from the payments for child support and restoration of her one-half interest in the dwelling house. The petition alleged as changed circumstances that appellee had exclusive custody of the children, and had allowed her only limited visitation rights, and that she will incur additional and increased living expenses because she is not living with appellees. She also alleged that appellee had an annual income of $35,000 and the primary obligation for the support of the children, that the agreement was inequitable, unconscionable and contrary to the laws and public policy of the state and that she signed the agreement when she was under great emotional stress and duress due to the divorce.

The chancellor found that the appellant had made the support payments until August 1, 1970, but not after that date, that all other agreements between the parties had been carried out, that there had been no material change in the circumstances to warrant the modification of the agreement, and that no testimony was offered to the effect that appellant was under duress when she executed the agreement. He gave judgment for the amount of the arrearages.

We have carefully reviewed the evidence as abstracted and do not find the chancellor's findings to be contrary to the preponderance of the evidence, as appellant contends. The evidence shows that appellant's income has increased to $46,000 per year, that appellee's net income is $2,062.43 · per month, that appellee had remarried and that his present wife's income was $10,500 or "take home" pay of $719.19 per month. The apartment now occupied by the appellant is too small to be adequate for her to have the children for extended visits, but it does not appear that financially, or otherwise, she is compelled to occupy an apartment this small, for which she pays only $182.50 rent. Appellant testified that one of the "changes" about which she was complaining was that she was not seeing as much of her children as she thought she would when the decree was entered, all the while admitting that she has never been denied the right to have them with her, that she is very much welcome in their home, that she has been to her former husband's home for meals and visitation of the children at his invitation, and that she would buy a house only if the children would come live with her. Appellee testified that the title to the dwelling house was placed with him pursuant to an agreement that the parent with whom the children chose to live would have the house. The only real change in circumstances here is appellant's retrospective disenchantment with the agreement between the parties and her disappointment at limitations on the company of her children for causes more within her control than not.

Appellant's argument that the agreement was inequitable and contrary to public policy is three-fold, i.e., the

primary obligation is upon the father to support the minor children of a marriage if he is financially able to do so, that the agreement results in relieving him of this obligation, and that she was under great emotional stress at the time she entered into the agreement. We find no merit in any facet of the argument. Even though the father may have the primary obligation for the support of his children, the mother is in nowise exempt from any obligation in this regard. A policy determination bearing on parental obligations was made by our General Assembly as early as Act 257 of 1921, whereby the support of unmarried minor children was made chargeable to the property of father and mother, jointly and severally, and the courts empowered to adjudicate the powers, rights and duties of parents living apart with respect to the persons and property of their unmarried minor children. Ark. Stat. Ann. §§ 57-104—108 (1947). When the Probate Code was adopted in 1949, the joint obligation of the parents was again recognized. Ark. Stat. Ann. § 57-633 (Repl. 1971). Even if it be said that these statutes simply impose liability in favor of third persons furnishing necessaries to a minor, it cannot be said that they are indicative of a policy that a mother has obligations to her child for his support which only come into existence when the father is impoverished. We think such statutes mean that when parents are divorced the proper contribution of the parents may be determined by the courts on an equitable basis taking into consideration the condition and means of each spouse, a view taken in other jurisdictions. *Brooks* v. *Brooks,* 166 Tenn. 255, 61 S.W. 2d 654 (1933); *Rose Funeral Home* v. *Julian,* 176 Tenn. 534, 144 S.W. 2d 755, 131 A.L. R. 858 (1940);[1] *Pieretti* v. *Pieretti,* 13 N. J. Misc. 98, 176A. 589 (1935); *Addy* v. *Addy,* 240 Iowa 255, 36 N.W. 2d 352 (1949); *State* v. *Haworth,* 66 Wyo. 238, 208 P. 2d 279 (1949). The fact that the father actually has custody of the children does not relieve the mother of any obligation, and she may even be required to contribute toward a college edu-

---

[1]While these Tennessee cases recognize and apply the principle, a Tennessee Court of Appeals has held that a mother cannot be required to make payments for future support, because the Tennessee divorce statutes, unlike ours, only authorize allowances for future support to be paid by the father. Full recognition is accorded the doctrine of the cases cited. *Hilton* v. *Hilton,* 463 S.W. 2d 955 (1970).

cation for her children. *Beasley v. Beasley*, 159 N.W. 2d 449 (Iowa 1968).

Our statutes relating to divorce also recognize that the court may make such order touching the care of children of a dissolved marriage as "from the circumstances of the parties and the nature of the case shall be reasonable" and to require the "person ordered to make payments" to furnish security in compliance therewith. Ark. Stat. Ann. § 34-1211 (Repl. 1962). Similar statutes have properly been held to mean that the court shall consider the financial ability of the parties jointly and to apply to whichever party shall be decreed to educate and maintain the children, so that the mother's financial ability and status is given the same consideration as the father's. *Pieretti v. Pieretti,* supra; *Beasley v. Beasley,* supra.

In considering amounts to be contributed for child support, the court should consider the needs of the children, the assets of each parent, their respective ages, earning capacities, incomes and indebtedness, state of health, future prospects and any other factors which will aid the court in reaching a just and equitable result. *Stillmunkes v. Stillmunkes,* 245 Iowa 1082, 65 N.W. 2d 366 (1954). While we would not go so far as to say that a mother could not recover from the child's father contributions for child support furnished by her, as some jurisdictions have said, we find the above constructions of the effect of similar statutes to be sound and in keeping with the policy considerations stated by them. Such constructions are also in keeping with considerations entering into our own treatment of child support cases. We have said that modifications of amounts allowed for child support are to be made according to the necessity of one parent and the ability of the other. *McCutcheon v. McCutcheon,* 226 Ark. 276, 289 S.W. 2d 521. See also, *Dixon v. Dixon,* 251 Ark. 927, 475 S. W. 2d 695. We have also said that in awarding child support, as well as alimony, the courts should give proper consideration to the financial condition of the parties. *Hoyt v. Hoyt,* 249 Ark. 266, 459 S.W. 2d 65.

If the courts may require a mother to contribute to her child's support, there is no sound policy reason why she may not enter into a contract with her husband governing such contributions, just as he may enter into such a contract with her under the same conditions, so long as the agreement is not adverse to the welfare of the child, subject, of course, to the same limitations as to enforcement by the courts because of changed conditions.

When we consider the appropriate factors, we find no basis for holding that the agreement is void. The evidence clearly shows that appellant's decision to sue for divorce was not a hasty one, that she was the first to consult the attorney who drafted the agreement, that she had moved out of the home shared by the parties before the divorce suit was filed, that she felt a responsibility for the support of the children, that, as appellant's contribution to their college education, appellee received the equity in the house because the children, all over 14 years of age, chose to live with him, that appellant consulted with the attorney on several occasions, some with appellee and some without him, that a change as to dependents to be claimed for income tax purposes was made for her benefit upon the suggestion of this attorney, that appellant read the agreement several times before it was executed, and was aware of, and understood, all its contents when she signed it. We can accord little weight to her present lament that the agreement is grossly unfair, based principally upon her giving up a $6,000 equity in the house, in view of the testimony heretofore outlined. Even though appellant says that she was under great emotional stress at the time and that she would probably still be negotiating had she not accepted the agreement made, there is no evidence of duress or overreaching. Appellee testified, without being contradicted, that appellant herself suggested the amount of $500 as a monthly child support contribution. It should be noted that appellee testified that he was paying $257.44 monthly on house mortgage installments, total house costs of $327.29 per month, and utility bills of $96.50. He testified that his monthly expenses for himself and the three children before his remarriage, including expenses for the child in college, were $2,321.45.

We find no justification for reduction of the child support payments sought by appellant. If she were otherwise entitled to such a modification, her failure to show a sufficient change of circumstances subsequent to the execution of the agreement and entry of the divorce decree would bar this relief.

What we have already said disposes of appellant's argument that there was error in decreeing a judgment for arrearages on appellant's child support payments.

The decree is affirmed.