**Elizabeth PENDEXTER**

v.

**Robert PENDEXTER.**

Supreme Judicial Court of Maine.

Sept. 7, 1976.

Wilson Steinfeld Murrell Barton & Lane by Thomas P. Wilson, Henry Steinfeld, Portland, for plaintiff.

Reef & Mooers by William P. Hardy, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

By this action appellant seeks reversal of an order of the Superior Court requiring him to pay his former wife an additional $10.00 per week per child for the support of their minor children.

We deny the appeal.

Appellant Robert Pendexter and appellee Elizabeth Pendexter were divorced in May 1970. Custody of the four minor children was awarded to Mrs. Pendexter. Mr. Pendexter was ordered to make support payments of $18.75 per week per child. In November 1970 Mrs. Pendexter moved for and was granted an increase in support payments of $1.25 per week per child.

In October 1974 she again sought an increase in support, alleging that conditions had changed materially since 1970. Hearing was had with both parties present. By this time, the eldest child was no longer a minor, so consideration was given only to the needs of the three remaining dependents.

Mrs. Pendexter was the only witness to testify at the hearing. Over defendant's objection, she was permitted to enter into evidence a list of household and personal expenses totaling $184.00 per week. She testified that her weekly income, together with existing support payments, totaled $141 per week, thus leaving a weekly deficit of about $30.00.

At the close of Mrs. Pendexter's testimony, the plaintiff rested. Defendant thereupon decided to offer no testimony on his own behalf, at which point plaintiff's counsel asked that he be allowed to call defendant as an adverse witness. Here, the record becomes confused. The court at one point stated to plaintiff's counsel:

> "I'm sure you may call anyone you may wish in a civil case. If you wish to call the defendant, I know of no reason why you can't call him."

Mr. Pendexter never took the stand, however, and eventually an order increasing his support obligation by $10.00 per week per child was issued.[1] Defendant seasonably appealed, and plaintiff cross-appealed on the issue of the defendant's failure to take the stand.

It is appellant's position that in order for a party to be entitled to an increase in support under 19 M.R.S.A. § 752 he or she must demonstrate (a) the original amount of support has become inadequate, (b) the moving party is unable to meet the increased need, and (c) the supporting party is capable of paying the requested increase. In appellant's view, none of these requirements was met in this case.

We agree that one seeking an increase in support payments must prove that the increase is necessitated by a change in circumstances and that the supporting party is financially able to meet the requested increase. *Luques v. Luques,* 127 Me. 356, 143 A. 263 (1928); *McLeod v. McLeod,* 131 N.J.Eq. 14, 23 A.2d 545 (1942); *Ricciardi v. Ricciardi,* 91 R.I. 455, 164 A.2d 855 (1960). We shall deal with those two requirements in the context of this case presently. Before that, however, we wish to make it clear that we do not agree with appellant's second assertion to the effect that when, as here, the moving party in a support action is the wife, she must dem-

---

* WEATHERBEE, J., sat at argument and participated in consultation but died prior to preparation of opinion.

1. The eldest child having reached majority, the amended order in effect increased appellant's total support obligation by only $10.00 per week.

onstrate that she is unable to meet the increased need out of her own resources.[2] The husband is primarily liable for the support of his children, and the wife's financial status is relevant only if the husband cannot provide a reasonable level of support on his own. *Womble v. Womble,* 295 Ala. ——, 321 So.2d 660 (1975).; *In Re Weisskopf's Estates,* 39 Ill.App.2d 380, 188 N.E.2d 726 (1963); *Boerger v. American General Insurance Co. of Minn.,* 257 Minn. 72, 100 N.W.2d 133 (1959); *In Re Estate of Peterson,* 66 Wis.2d 535, 225 N.W.2d 644 (1975); *H. Clark, Law of Domestic Relations,* § 15.1 (1968).[3] It follows, therefore, that the wife's resources are not relevant in an action to increase support if it appears that the husband's assets are sufficient to meet the expanded needs of the children. Thus, in this case Mrs. Pendexter's income is of no moment as long as she can show that her husband is financially able to meet the increased needs of the children.

Turning to appellant's other arguments, we treat first the requirement of changed circumstances. Appellant characterizes appellee's claim of increased need as being nothing more than a general assertion that things cost more because of inflation. In connection with that point, appellant argues that it was error to permit Mrs. Pendexter to testify concerning her house-

hold and personal expenses since those expenses were not documented and many of them were attributable to the support of Mrs. Pendexter and her mother rather than the Pendexter children. Appellant further argues that it was error to allow into evidence Mrs. Pendexter's list of expenses, such list being hearsay, self-serving, and not entirely relevant; and, absent that list, there was no evidence that the children's needs had changed.

We agree that the list in question was not properly admitted. *Rodrigue v. Letendre,* 158 Me. 375, 184 A.2d 777 (1962); *Hunter v. Totman,* 146 Me. 259, 80 A.2d 401 (1951); *Talbot v. Hathaway,* 113 Me. 324, 93 A. 834 (1915).

■ We do not agree, however, that the items on the list provided the only evidence of increased need or that the admission of the list prejudiced appellant's cause. Mrs. Pendexter testified that because of the sharply rising cost of living, especially during the two years immediately preceding her request for increased support,[4] she was no longer able to make ends meet and that she was forced to incur indebtedness of about $2,000 as a result. She further stated that despite a recent pay increase and the $60.00 per week supplied by her ex-husband under the then existing support

2. Appellant points out that appellee's salary has increased since the latest support order and that appellee is no longer responsible for the support of the eldest child. These changes have resulted, says appellant, in an increase of 120% in appellee's "per child income" and, having failed to show that the entire increase has been absorbed by inflation, appellee should not be permitted to assert a detrimental change in circumstances. Appellant's argument has a certain persuasiveness to it, but unfortunately for his cause it does not comport with the present state of the law on the subject.

3. For an opposite view, see *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974). In that case the Pennsylvania Court said:
"We hold that insofar as these decisions [prior line of cases adhering to the position

that the husband has the primary duty of support] suggest a presumption that the father, solely because of his sex and without regard to the actual circumstances of the parties, must accept the principal burden of financial support of minor children, they may no longer be followed. Such a presumption is clearly a vestige of the past and incompatible with the present recognition of equality of the sexes. The law must not be reluctant to remain abreast with the developments of society and should unhesitatingly discard former doctrines that embody concepts that have since been discredited." 318 A.2d at 326.

4. At several points the court expressed its awareness of the fact that the cost of living has *"increased substantially"* in recent years.

order, she had a deficit of between thirty and forty dollars per week.

While it is true, as appellant points out, that part of Mrs. Pendexter's weekly budgetary deficit was attributable to the higher cost of supporting herself and her mother, the fact that the presiding justice ordered what effectively was an increase of only ten dollars per week indicates to us that he recognized the distinction between child-related and nonchild-related expenses and intended to make appellant bear the burden of only the increases in the former category. We conclude, therefore, that appellee made a sufficient showing of increased need and that appellant was not prejudiced by the admission of appellee's list of expenses.

Finally, on the issue of Mr. Pendexter's ability to afford the increased support payments, appellant submits that the only evidence on the point to be adduced at the hearing was Mrs. Pendexter's statement that Mr. Pendexter was employed as a school teacher, has an antique business, a rooming house, a real estate broker's license, and *may* have earned a $6,000.00 broker's commission in 1974. Appellant contends that these facts do not support the conclusion that he is financially able to pay the increase ordered by the court below.

We do not agree. The evidence of appellant's financial status was scant, to be sure. However, the uncontroverted testimony that Mr. Pendexter was continuing in his employment as a teacher and that he earned a $6,000.00 commission was sufficient evidence of his ability to pay ten dollars per week more for the support of his children.

Having considered and rejected all of appellant's arguments, the entry must be:

Appeal denied.[5]

WERNICK, J., did not sit.

DUFRESNE, Chief Justice (concurring in result)

■ Following the dissolution of her marriage to Robert Pendexter, the plaintiff, Elizabeth Pendexter, brought two petitions for modification of the original decree granting her support money for their four minor children on the ground that conditions surrounding their care and maintenance had changed materially. In this appeal, we are only involved with the custodian-mother's second request initiated in October 1974 which resulted in an overall increase of only ten ($10.00) dollars per week in support payments to be made by the defendant father to the plaintiff mother for three minor children. I concur that the instant appeal should be denied.

In most jurisdictions, as between the parents, the common law imposed the obligation to support the minor legitimate children of the marriage exclusively upon the father. See 59 Am.Jur.2d, Parent and Child, § 61, note 16 and cases cited; 67 C.J.S., Parent and Child, § 15b(1), note 47 and cases cited. As stated in *Gilley v. Gilley*, 1887, 79 Me. 292, at page 294, 9 A. 623, the law imposes upon the father the duty to nurture, support and educate his minor children during infancy and early youth, which duty continues until their maturity, when the law determines that they are capable of providing for themselves, and "at least during the life of the father, the mother, in the absence of any statutory

---

5. Since we have determined that appellant's claim must be denied, we need not reach cross-appellant's charge that her right to call appellant to the stand was wrongfully denied. We have doubts that the issue was properly preserved in any case.

Notice: This opinion is subject to formal revision before publication in the Maine Report. Readers are requested to notify the Administrative Assistant to the Chief Justice of any typographical or other errors of form in order that corrections may be made before the print goes to press.

provision, or decree relating thereto, *not being entitled to the services of their minor children,* is not bound by law to support them." (Emphasis supplied)

In *Gilley,* supra, this Court recognized that the underlying rationale for the common-law rule of the father's exclusive duty to support his minor children was the corresponding common-law rule entitling the father as of right to the services of the minor children of the marriage.

Furthermore, "[u]nder the common law all of the earnings and property of the wife belonged to the husband. Therefore it was only natural and proper that he should be the one primarily responsible for the support of the minor children, which has always been regarded as a natural obligation of both parents. Under such circumstances, it would have been idle to place upon the wife obligations that could only be satisfied out of the property of the husband." *Purity Baking Co. v. Industrial Commission,* 1929, 334 Ill. 586, 166 N.E. 33, 34.

The wife has long since the adoption of the common-law rule of exclusive duty of the husband to support the minor children of the marriage become emancipated and now possesses the full enjoyment of her property and earnings. In most cases where the bonds of matrimony are dissolved, she is given the custody of the minor children and thus becomes invested correspondingly with the right to their services which would otherwise belong to the father.

To cling to the fiction that the father is necessarily the best provider and that the mother, allegedly being of the weaker sex, is incapable of contributing to the natural duty of supporting her offspring is to live in the past and refuse to accept women's desire to reach full equality with their male counterparts, including the right to share the legal responsibility of support to which their children are morally entitled. It is an undisputed fact of which this Court should take judicial notice that women have demonstrated their matching ability with that of the male species at practically every level of mental and physical activity.

Public policy is of prime consideration in all procedures relating to divorce and it is most important that the judicial process within delegated legislative authority be given such flexibility as will allow implementation of the State's role of parens patriae in promoting the best interests and welfare of minor children, especially after the family unit has been severed through divorce of the parents. See *Deblois v. Deblois,* 1962, 158 Me. 24, 30, 177 A.2d 199.

In *Greenwood v. Greenwood,* 1915, 113 Me. 226, 229, 93 A. 360, 361, this Court said:

"The State has an interest in the welfare of the child, and in all divorce proceedings that welfare is held to be superior to the wishes of the parent, and governs the court in its decrees as to custody and maintenance. This jealous regard for the rights of the child should look askance at contracts between parents attempting to shift the legal responsibility. The relation between husband and wife is one thing, that between parent and child is quite another."

Such a strong state policy favoring the promotion of adequate child support would be somewhat frustrated, should antiquated concepts of the legal unity of husband and wife and unrealistic presumptions of inferior earning power of the wife prevailing in the previous century receive judicial acquiescence in these modern times.

"Law is only sensibly formalistic. It is a practical science." *Bedell v. Reagan,* 1963, 159 Me. 292, 192 A.2d 24. Courts must take judicial notice of changing times and conditions. *Allison v. Allison,* 1961, 188 Kan. 593, 363 P.2d 795.

Where the reason for the rule, as in the instant case, no longer exists, the

rule itself should cease, especially when mandated by public policy considerations. Appeal of *Clarissa D. DeMendoza*, 1945, 141 Me. 299, 43 A.2d 816. "Reason is the soul of the law, and when the reason of any particular law ceases, so does the law itself." *Emery, Appellant*, 1889, 81 Me. 275, 277, 17 A. 68, 69; *Robinson, Appellant*, 1895, 88 Me. 17, 22, 23, 33 A. 652.

In *Emery, Appellant*, supra, the common-law rule that the will of a "feme sole" was revoked by her marriage was said to have been abrogated when the Legislature empowered married women to make, alter or revoke a will as fully and as freely as if she were not married.

In *Robinson, Appellant*, supra, this Court at that early date used the following crisp language to dispose of an analogous problem:

"It is manifest that these statutes [emancipation of married women] have wrought great modifications and radical changes in the relative property rights of husband and wife. In contemplation of law they are no longer one person, and their interests in property are no longer identical but separate and independent. Under these statutes the wife is invested with greater privileges and weighted with greater responsibilities and liabilities than before. The rule of the common law creating estates by entirety is irreconcilable with both the letter and the spirit of these statutes. It never rested upon a rational or substantial groundwork. It had its origin in feudal institutions and social conditions which were superseded centuries ago by the more enlightened principles of a progressive civilization. It is now repugnant to the American idea of the enjoyment and devolution of property and to the true theory of the marriage relation. 'The reason of the law,' says Lord Coke, 'is the life of the law; and *cessante ratione lex ipsa cessat.*' The fictitious basis of this rule having been removed the rule itself must fail. To declare that there is no authority in the court to effectuate a clearly expressed and unmistakable intention of a grantor or testator, against such an antiquated and exploded dogma, would be a poor tribute to the creative power of the law and the original conceptions of justice in modern courts. The common law would ill deserve its familiar panegyric as the 'perfection of human reason,' if it did not expand with the progress of society and develop with new ideas of right and justice. 'Considering the influence of manners upon law,' says Chancellor Kent, 'and the force of opinion which is silently and almost insensibly conducting the course of business and the practice of our courts, it is impossible that the fabric of our jurisprudence should not exhibit deep traces of the progress of society as well as of the footsteps of time.'" (Emphasis in original)

The genius of the common law is its flexibility and capacity for growth and adaptation. When common-law principles are no longer supportable in reason they are no longer supportable in fact. *Handeland v. Brown*, 1974, Iowa, 216 N.W.2d 574.

It is fundamental that the rules of common law which are court-made rules can be changed by the court when it becomes convinced that the policies upon which they are based have lost their validity or were mistakenly conceived. *Spokane Methodist Homes, Inc. v. Department of Labor and Industries*, 1972, 81 Wash.2d 283, 501 P.2d 589.

As well stated by the Pennsylvania Court in *Conway v. Dana*, 1974, 456 Pa. 536, 318 A.2d 324, the primary purpose of child support is the best interest and welfare of the child. Support, as every other duty arising from the relationship of parent and child, is the equal responsibility of both mother and father, to be discharged in accordance with their respective capacity and ability.

The mother is as much morally bound to care for, support, nourish, and educate her minor child as the father. *Growe v. Growe*, 1966, 2 Mich.App. 25, 138 N.W.2d 537.

Furthermore, the old common-law rule has been modified by a number of statutory enactments.

Our divorce statute itself provides that

"[t]he order of the court for support of minor children may run against the father or the mother in whole or in part or against both as the court in its sound discretion shall determine, irrespective of the fault of the father or the mother in the divorce action. When the order is to run against both, the court shall specify the amount each shall pay." 19 M.R.S. A., § 752.

Section 211 of Title 19 provides for parity of rights respecting their minor children between the father and mother. Section 217 of Title 19 imposes limited liability, joint and several with their minor child, upon both parents for their child's wilful or malicious damage to property or injury to person. Section 481 of Title 19 subjects both parents to criminal penalties for their failure to support their dependent minor children. Sections 442 and 443 of Title 19 (Uniform Civil Liability for Support Act) mandate identical duties of support of their minor child upon each parent. Moreover, the wife is made liable for the support of her husband when in need.

In view of the factual emancipation of women, the change of times, the enabling statutory directive to the judiciary that support orders may be made to run against both the father and mother as the court in its sound discretion shall determine, the old common-law rule that the father is primarily liable for the support of his children without regard to the mother's earnings and assets is outmoded and must be updated.

In fixing the amount to be contributed by the father for the support of the minor children of divorced parents, the court should consider the needs of the children, the assets of each parent, their respective ages, earning capacities, incomes and indebtedness, state of health, future prospects, the existence of other dependents, and any other factors which will aid the court in reaching a just and equitable result, having in mind that the primary state purpose is to implement the natural duty of both parents to support their offspring. *Barnhard v. Barnhard*, 1972, 252 Ark. 167, 477 S.W.2d 845. See also *Plant v. Plant*, 1974, 20 Ill.App.3d 5, 312 N.E.2d 847; *Anderson v. Anderson*, 1973, Tex. Civ.App., 503 S.W.2d 124; *Parivash v. Yousef*, 1965, 89 N.J.Super. 133, 214 A.2d 314, remd. 94 N.J.Super. 403, 228 A.2d 698.

The plaintiff's proof was sufficient to make out a prima facie case respecting the material change in the circumstances surrounding the needs of the minor children and the defendant's ability to meet the increased support order. The Court undoubtedly considered the respective financial ability of the parties in reaching his conclusion. Therefore, I concur in denying the defendant's appeal.

ARCHIBALD and DELAHANTY, JJ., join in opinion of DUFRESNE, C. J., concurring in result.