Joseph R. MITCHELL

v.

Sheila A. MITCHELL (Simoneau).

Supreme Judicial Court of Maine.

July 20, 1979.

---

Ellsworth T. Rundlett, III (orally), Portland, Terry N. Snow, Cumberland Center, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by Robert J. Piampiano (orally), Portland, for defendant.

Before McKUSICK, C. J., POMEROY, WERNICK and ARCHIBALD, JJ., and DUFRESNE, A. R. J.

WERNICK, Justice.

Sheila Mitchell, now remarried and known as Mrs. Sheila Simoneau, has appealed from judgments adverse to her entered in the Superior Court (Cumberland County) resulting from that Court's denial of her motions for (1) enforcement of an outstanding order for child support which required that her former husband, Joseph R. Mitchell, pay for

"all reasonable medical, dental and hospital expenses, incurred for . . . [their] minor children"

and (2) the alteration of that decree to increase from $10.00 to $30.00 per child, per week, the amount of child support payments.

We deny the appeal from the judgment refusing to increase the weekly support payments. However, we must sustain the appeal from the judgment which refused to enforce in any respect the obligation of Joseph R. Mitchell to pay for "all reasonable medical, dental and hospital expenses."

The parties were married in Portland, Maine, in 1969. They were divorced on June 3, 1977, and each has since remarried. During their marriage to each other, the Mitchells adopted three children: Ludger, Wanda and Jeanine. In connection with the divorce proceedings, the Superior Court awarded custody of Wanda and Jeanine to the mother and custody of Ludger to the father. The Court further ordered the father to make payments of $10.00 per week, per child, for the support of Wanda and Jeanine and, as already mentioned, to pay for each child's reasonable medical, dental and hospital expenses. Around January 1, 1978 Joseph Mitchell asked his former wife to take custody of Ludger, and when she agreed, he commenced paying her an additional $10.00 per week for Ludger's support, bringing the total child support to be paid to $120.00 per month.[1]

On June 16, 1978, roughly one year after the divorce, the instant motion for enforcement of the Superior Court's order for child support was filed, the claim being that all three of the children were in need of orthodontic treatment, and Joseph Mitchell was refusing in this regard to honor the obligation claimed to have been imposed upon him by the outstanding decree. Also filed was the instant motion to alter the outstanding decree by increasing the support payments to $30.00 per child, per week. After a hearing, the presiding Justice, without presenting (though requested) findings of fact and conclusions of law, denied each motion.

We address, first, the denial of the motion for enforcement. The record reveals unrebutted expert testimony that all three children were in need of orthodontic treatment, not for merely cosmetic reasons but

---

1. The original decree ordering support provided that four weeks would be deemed the equivalent of one month.

as necessary to maintain healthy gums and teeth.[2] In light of this evidence we are called upon to decide whether the Justice's refusal to order the outstanding decree enforced in any respect is rationally supportable in accordance with correct legal principles.

■ Under *Wilson v. Wilson,* 143 Me. 113, 118, 56 A.2d 453, 456 (1947) equitable considerations may be brought to bear as to the enforcement of a decree for child support. We cannot glean from the instant record, however, that the presiding Justice purported to utilize such equitable powers. He neither ordered the prior decree amended retroactively, nor did he indicate particular respects in which equitable concerns had relevance to affect the failure of the father to comply with the outstanding decree. Rather, the Justice merely denied enforcement in any respect, a disposition which is hardly consonant with an approach on the basis of ameliorating equitable considerations.

Moreover, we cannot regard the denial of the motion for enforcement as an exercise of the power possessed by the Court to relieve the father of his obligations for child support on the ground that he had become financially unable to make any payments whatsoever required by the outstanding decree. Our review of the record discloses no evidentiary basis that would rationally justify such a finding. While it may be that Joseph Mitchell cannot bear the financial burden of paying for the orthodontic care of all three of his children at one time, the evidence does not support a finding that he cannot afford to pay anything at all towards the orthodontic care at least of one child.

We are therefore left with no rational basis adequately to account for the Justice's absolute denial of enforcement other than that he believed that *orthodontic care* is not to be taken as a "reasonable medical . . [or] dental" expense within the meaning of the decree sought to be enforced. So grounded, the Justice's refusal of all enforcement relief was error.

■ Decisions in other jurisdictions (*Womble v. Womble,* 56 Ala.App. 318, 321 So.2d 660 (1975), *cert. denied,* 295 Ala. 429, 321 So.2d 664 (1975); *Mahaffey v. Mahaffey,* 238 Ga. 64, 230 S.E.2d 872 (1976); *Rosenthal v. Rosenthal,* 265 App.Div. 880, 38 N.Y.S.2d 24, *rehearing and appeal denied,* 265 App.Div. 955, 39 N.Y.S.2d 607 (1942); *Paul v. Paul,* 7 Ohio App.2d 235, 219 N.E.2d 613 (1966)), as well as our own Maine statute defining the profession of dentistry (32 M.R.S.A. § 1081 (1978)),[3] reveal that orthodontal care is generally considered a part of

---

2. Dr. Robert L. Tanner, an orthodontist who examined all three children, testified for the appellant. He stated that Ludger's "bottom teeth [being] as severely crowded as they are in later life the gums would be very hard to maintain and remain clean and in his later life he would probably lose more teeth." Dr. Tanner testified that Jeanine also suffered from severe crowding and that treatment was "necessary for adult health." With respect to his examination of Wanda, he stated she was "a very severe case . . . probably . . . in the top percentage of severity. She has not only the problem of crowded teeth but when we taken an x-ray and examine her jaw relationship, the jaws themselves do not match, meaning the bottom jaw recedes and her top jaw itself is obtrusive . . . . . This girl really has a severe jaw problem as well as a dental problem." Dr. Tanner estimated that the cost of orthodontic treatment would be $1,850.00 apiece for Ludger and Jeanine, and $2,150.00 for Wanda. Although conceding it was "a difficult choice", he voiced his opinion that Wanda's dental needs were "probably . . . the most severe."

3. Section 1081(1) provides in part:
  "Any person shall be deemed to be practicing dentistry who performs, . . . any dental operation or oral surgery or dental service of any kind, . . . or who directly or indirectly, by any means or method, takes impressions of the human tooth, teeth, jaws or performs any phase of any operation incident to the replacement of a part of a tooth; or supplies artificial substitutes for the natural teeth, or who furnishes, supplies, constructs, reproduces or repairs any prosthetic denture, bridge, appliance or any other structure to be worn in the human mouth, . . . or corrects or attempts to correct malformations of teeth or of the jaws, . . . or who diagnoses, makes and adjusts appliances to artificial casts of malposed teeth for treatment of the malposed teeth in the human mouth, . . . ."

dental care, and that the expense of such care is to be borne by the parent responsible for a child's "reasonable medical, dental and hospital expenses." We now so decide.

 Turning to the motion for an increase in weekly child support, we note that it was brought just one year after the parties had reached agreement with respect to property division and child support, and had incorporated this agreement in the June 3, 1977 divorce decree. The burden was on the movant to demonstrate that (1) an increase in child support payments was necessitated by changed circumstances which rendered the child support provisions of the June 3, 1977 decree inadequate, and (2) Joseph Mitchell had sufficient financial resources to bear the burden of the requested increase. *Mazerolle v. Mazerolle,* Me., 380 A.2d 1029, 1030 (1977); *Pendexter v. Pendexter,* Me., 363 A.2d 743, 745 (1976).

Here, the presiding Justice denied the motion for an increase in the child support payments without providing findings of facts and conclusions of law. However, in this type of proceeding he had no such obligation. See *Conger v. Conger,* Me., 304 A.2d 426, 429 (1973), and Rule 52(a) M.R.Civ.P. Reviewing the entirety of the record, we decide that the presiding Justice was entitled to conclude that Sheila Simoneau had failed to meet the ultimate burden of proof which rested upon her as the party moving for an increase in weekly payments for child support.

This case, then, must be remanded for further proceedings concerning Joseph Mitchell's obligation to pay for orthodontic treatment for his children. Upon remand, the Superior Court is to require him to pay for orthodontic care to the extent permitted by his financial resources.[4] It is his burden

> "to show that he has in good faith exhausted all of the resources at his command and has made a diligent and bona fide effort to comply with the decree awarding . . . child support." *Mahaffey v. Mahaffey, supra,* 230 S.E.2d at 873.

The entry is: The appeal from the judgment refusing an increase in support payments is denied.

The appeal from the judgment refusing enforcement of the provisions of the outstanding decree is sustained; in this aspect the case is remanded for further proceedings consistent with this opinion.

DELAHANTY, GODFREY and NICHOLS, JJ., did not sit.

---

4. For example, the Justice might conclude that Joseph Mitchell is able to pay the costs of orthodontic treatment for one child only, in which case the Court might order that he pay for the orthodontic care of the child found to be most in need of immediate treatment.