No. 33,051

MARY RACHEL DAVIS, *Appellee,* v. COURTNEY B. DAVIS, *Appellant.*

(65 P. 2d 562)

Opinion filed March 6, 1937.

A. M. Ebright, P. K. Smith and Bernard Peterson, all of Wichita, for the appellant.

J. B. Patterson, of Wichita, and Merrill E. Shoup, of Colorado Springs, Colo., for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was originally an action for divorce, division of property rights, alimony and for custody and support of a minor child. The husband appeals from rulings on motions filed subsequent to the original decree. The rulings pertain to the support of the minor daughter and to contempt proceedings filed against each other by the respective parties. The appeal also attacks the validity of that portion of the original decree which provided for the support of the child beyond her minority.

Defendant was an oil operator, and at the time of divorce was worth approximately $60,000 or $70,000 in oil properties. The parties had only one child, Peggy Jane, who was then six years of age. They resided in Wichita. On June 13, 1929, a decree of divorce was entered in favor of appellee. The decree fixed the property rights of the parties. They agreed on the amount and period for which permanent alimony was to be paid to appellee, on the custody of the child, and the amount and duration of payments for child support. The decree was entered accordingly. It provided for payment of permanent alimony to appellee in the sum of $100 per month on the first of each month, until such time as appellee should remarry, or until her decease, and for certain rental payments on the residence. The decree awarded the permanent custody and control of the child to the mother, but granted the father temporary custody during fifteen days each year, but at such times as not to interfere with the child's education. It provided for payment to appellee of $200 per month for the care, support and education of the child, and all necessary doctor bills until the child reached the age of twenty-three, and $100 per month between the ages of twenty-three and thirty-three.

The day following the decree appellee and child left for Colorado, where they remained until the fall of 1929. They then returned to Wichita, where the child entered school. In the spring of 1930 they returned to Colorado for the summer. In November, 1930, appellee was married to George H. Krause, of Colorado Springs. They have lived there ever since. Until November, 1930, appellant paid the child support in full, and $1,000 on the alimony.

Since then he has paid nothing. He, like many other oil men, was financially ruined during the depression. It appears that during a number of years he was unable to pay much, and at times nothing, on alimony or child support. No effort, however, was made to bring these facts to the attention of the court, and to have the order for further support modified or temporarily canceled. Later he again became able to pay but did not do so. Appellant made various attempts to visit his daughter. Some of them were unsuccessful. It appears this was true in part before he became delinquent in his payments. It will be noted the decree failed to fix a definite time or times during which appellant should have the child for fifteen days each year. Appellant very naturally was offended by reason of his failure to get to visit his child. It appears, also, the attitude of the grandparents, on the mother's side, was instrumental in frustrating his efforts. On the other hand, it appears the child had been in ill health much of the time, and appellee had expended about $1,600 for her medical care. This, combined with the failure of payments by appellant in accordance with the decree, naturally contributed to appellee's aggravated state of mind. A climax was inevitable.

Appellee filed an application to set aside the provision in the original decree, whereby appellant had been granted the custody of the child for fifteen days in each year, and to deny him all right of visitation. In the application she set forth appellant's failure to pay doctor bills and to make the payments for child support. Such order was made on November 16, 1934. On December 27, 1934, appellant, after showing the order of November 16 was procured without notice to him, procured a modification of that order by obtaining permission to see the child during certain hours of December 27 and 28. It was further ordered that the application to set aside the entire journal entry of November 16 should be set down for further hearing. About one year later and on December 1, 1935, appellee had appellant cited for contempt by reason of his failure to comply with the original judgment. The citation directed appellant's appearance on December 20. On December 19 appellant had a citation for contempt issued against appellee for failure to comply with the original decree. This citation directed her appearance on January 17, 1936. Appellant filed his verified answer setting forth fully the refusal of appellee to permit visitation of the

child, his financial embarrassment and other facts tending to purge him of contempt. He also filed a motion to modify the original order as to child support and to vacate the order as to payments of alimony.

A field day took place on January 27, 1936, when all motions were heard. It is well to state now the parties agreed on one thing. It was that the original alimony judgment, providing for payments of $100 per month without fixing the total sum to be paid as alimony, was void. It will therefore receive no further consideration. The trial court, being advised of the contents of the various applications, motions, the answer of appellant, the citations it had issued, and after hearing the testimony of appellant, appears to have concluded it was sufficiently informed of the entire situation, and could dispense with further testimony from appellee relative to the subject of contempt insofar as it affected either party. When this fact was indicated appellee simply testified as to payments she had received. This amount she fixed at $4,200. She denied a payment of $2,000 in cash which appellant testified he gave her immediately following the divorce. She also stated she had expended $1,588.24 for doctor bills for the child, and that a bill of about $75 would be due at the end of the month.

The trial court found neither of the parties was guilty of contempt. It then awarded appellant temporary custody of the child twenty-five days in each year, but on this occasion definitely fixed the period during which appellant should have such custody, and also provided for appellant's right of visitation at Colorado Springs, on certain occasions. It calculated the amount past due for child support and determined it to be $10,500. In arriving at the balance due it credited on the child support the amount appellant had paid appellee under the void alimony decree. According to an affidavit of counsel for appellant, the trial court had indicated the past-due installments were excessive but that it was without power to reduce them. Without narrating the details of appellant's financial recovery, it may be stated it had been of such a phenomenal character that appellant was later able to pay. Judgment was rendered for the total amount due and unpaid. The trial court ordered him to pay amounts past due as follows: $2,000 in cash to be paid within 30 days from the date of the order and the further sum of $150 on the first day of each and every month thereafter until the amount past due was paid. In addition to the amount past due the court

provided for future support at the rate of $50 per month, plus all medical, surgical or hospital expenses necessary for the child until all past-due installments had been paid in full.

Appellant's first contention is, the court exceeded its authority in the original decree in providing monthly payments for child support which extended past the age of the child's minority, and hence the decree is void.

The original judgment was rendered June 19, 1929, as per agreement of the parties. No appeal was taken therefrom. No motion has since been filed to vacate it. Its validity was not challanged in the numerous motions filed in this proceeding and hence there is no ruling of the trial court before us requiring a review. It appears it is being attacked for the first time on this appeal. Furthermore, the payments here involved pertain to the period of her minority, and the question of payments after her minority is not now before us.

Appellant next contends the trial court erred in holding it had no power to reduce past-due installments for child support. The courts are divided on the question. There is respectable authority to support appellant's contention. This is especially true in jurisdictions where support for children is included in the award of alimony and where the alimony award is subject to modification and has been held not to constitute a vested right.

Appellant contends the precise question has not been squarely passed upon by this court. He urges, however, we have held, in effect, the trial court had such power. (*Miles v. Miles,* 65 Kan. 676, 70 Pac. 631; *In re Pettit,* 84 Kan. 637, 114 Pac. 1071; *Greenwood v. Greenwood,* 85 Kan. 303, 116 Pac. 828; *Rowell v. Rowell,* 97 Kan. 16, 154 Pac. 243; *Ramsey v. Ramsey,* 129 Kan. 326, 282 Pac. 590.) The first four cases cited do not involve the exact question of authority to modify past-due installments. In the Ramsey case the husband was in arrears on payments. The trial court calculated the amounts the mother had actually expended for the child and rendered judgment for that amount, which was less than the order required him to pay. The husband appealed, contending, first, the amount found to have been expended was not supported by the evidence, and second, the trial court had no jurisdiction to render a money judgment against him in that proceeding. This court found the judgment was supported by evidence, that by virtue of G. S. 1935, 60-1510, the trial court had power to modify the original order and that by virtue of G. S. 1935, 60-3317, the judgment could not be

declared to be erroneous where the substantial rights of the parties complaining have not been prejudicially affected and where upon the whole record it appeared that substantial justice had been done. It is apparent a reduction was made, but it is also apparent the appeal in the Ramsey case was not upon the specific question of the power of the court to reduce past-due installments. That question was not raised on appeal.

Appellant insists the power in question is authorized by G. S. 1935, 60-1510. It reads:

"When a divorce is granted the court shall make provision for the guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect whenever circumstances render such change proper."

The statute plainly makes it mandatory that provision be made at the time of divorce for the guardianship, custody, support and education of minor children. It provides any order in those respects may be modified or changed whenever circumstances render such change proper. Of course, until changed, the order remains in full force and effect. It would appear the statute contemplated the modification should be made when the circumstances changed. The statute specifically provides for prompt relief to the father in case of adversity, as well as relief to the custodian, for the benefit of children, in the event of increased ability to pay. It appears to us a fair interpretation of the statute, and orderly administration of it requires that the privilege of relief thereby provided be exercised at the time the changed conditions arise. A custodian charged by a court with the responsibility of the care, plans and education of minor children has both a moral and legal right to depend upon the order of that court for their support, until the court in its wisdom shall see fit to alter it. It is only upon such security and assurance that proper and safe plans for the best interest of children can be made. If by virtue of the statute the court has power to modify a former order by reducing past installments, then by the same token it has power to increase past-due installments, and if the original order provided only for custody and failed to provide for support, the court could at a later time modify the original order and require payments for past years. We do not believe the statute was intended to be thus interpreted. In the early case of *Kendall v. Kendall*, 5 Kan. App. 688, 48 Pac. 940, the latter condition existed and the court reversed the trial court and held the payments should

commence from the date of modification and not from the date of the original decree. (See, also, *Delbridge v. Sears*, 179 Ia. 526, 160 N. W. 218.) In support of the ruling of the trial court, appellee also cited *Hyde v. Hyde*, 143 Kan. 660, 56 P. 2d 437, and *Burnap v. Burnap*, 144 Kan. 568, 61 P. 2d 899. In the Hyde case the question was not squarely before us and the author of that opinion cautiously refrained from expressing any view on the subject. In the Burnap case the mother brought an action against the husband for amounts past due for child support under the order of a Colorado court. Defendant's demurrer to the petition was overruled. From that ruling he appealed. He contended the judgment of the Colorado court was not final, because that court reserved power to modify the judgment. In affirming the order overruling the demurrer this court said:

"Defendant assumes, and under the pleadings correctly assumes, the law of Colorado is the same as the law of Kansas. . . . The district court properly held the Colorado court had no power to modify its judgment with respect to amounts due and unpaid. The judgment was final so far as they were concerned." (p. 569.)

See, also, *Adair v. Superior Co.*, 44 Ariz. 139, 33 P. 2d 995, 94 A. L. R. 328, and annotation.

In order to avoid any undue burden the trial court, in the instant case, reduced the future payments until the past-due installments were paid in full, but refused to modify the latter on the ground it was without authority so to do. In that ruling this court concurs. The court had full power to modify its former order for support of the child. It could either increase or decrease the amount, but the change could have only a prospective and not a retroactive effect.

It is next urged the willful disobedience of the decree by appellee worked a modification thereof as to appellant. We might state here the court did not construe appellee's acts as willful disobedience to the court's order. We shall, however, refer to that subject later. It is contended the decision in *Combs v. Combs*, 99 Kan. 626, 162 Pac. 273, supports appellants' contention. In part it was there said: "Disobedience of the original decree naturally worked a modification thereof." (p. 630.) Certainly it cannot be generally asserted, as a fixed principle of law, that every failure of one party to comply with an order of this nature completely relieves the other party of all responsibility. Under those circumstances a trial court might not punish the husband for contempt to obey the order, but the order remained in full force until modified or set aside. Besides, a

father is legally bound to support his child. In the Combs ·case the father was granted the right of visitation at all reasonable and sea-sonable times. In the instant case that right was· originally limited to fifteen days each year, and no specific time for the fifteen days was fixed. The failure to fix the time itself opened the door to trouble. This fact was recognized and corrected in the subsequent order.

Appellant also insists the court erred in not finding appellee guilty of contempt on the undisputed evidence. Appellee refrained from introducing rebuttal testimony touching the subject of contempt only after the court indicated it did not desire to hear further evidence on that subject. Furthermore, this court has frequently ruled a court or jury is not required to believe or accept as true the testimony of witnesses merely because there was no direct evidence contradicting the same. (*People's National Bank v. Diven*, 135 Kan. 400, 10 P. 2d 883, and cases cited.) We have no way of knowing what testimony of appellant the court believed or disbelieved. It specifically found neither of the parties were in contempt of the court's orders. That must end the contention so far as this court is concerned. It may also be helpful to note the primary purpose of contempt citations in cases of this character. In a similar case, *Barton v. Barton*, 99 Kan. 727, 163 Pac. 179, the late Chief Justice Johnston aptly said:

"The primary object of the proceeding was to protect private rights; that is, to compel compliance with the decree of the court rendered in a civil action, and only incidentally to vindicate the authority of the law." (p. 728.)

It is further contended this was a proceeding on citations for contempt, and the trial court, having failed to find appellant in contempt, erred in three particulars, to wit: first, in rendering any money judgment against him; second, in rendering the judgment without proof the amount of the judgment had been expended for the care of the child; and third, in creating an estate for the child out of the property of the father.

The contentions will be treated in the order stated. First, the proceeding was not merely one for contempt. There was a motion to set aside the original judgment for alimony and another motion by appellant to modify the original order for child support. Somewhere in the course of the proceedings there apparently had been a conference between counsel for the respective parties and the court, although it is not set forth in the record. At any rate, the trial

court indicated it was its understanding evidence was to be introduced only as to the payments which had been made. When the court so indicated, counsel for appellant said:

"I don't know how we can defend ourselves in this contempt proceeding or *how the court can arrive at what he should pay until he knows what he has done in the past and what effort he has made."* (Italics inserted.)

That is exactly what was done. Evidence was received on that subject and the total amount paid was determined by the court on conflicting evidence. When that had been accomplished, and on the basis of the amount found to be past due, appellee's motion to modify the original order was sustained as to future payments. In the Ramsey case, *supra,* objection was made to the jurisdiction of the court to render a judgment for the amount past due, and this court said:

"It would be too technical to say that the court did not have jurisdiction to render the judgment that was rendered in the face of section 60-3317 of the Revised Statutes, which directs this court to disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining where it appears upon the whole record that substantial justice has been done by the judgment of the trial court." (p. 327.)

Touching the second contention, it is well to remember the original decree did not contain a conditional order for the payment of $200 per month for the support of the child. The order was not conditioned that the amount must actually be expended each month nor that the order should end in the event appellee remarried. The order was made upon agreement of the parties. The order limited the payment of alimony to appellee until her remarriage, but it did not so limit the support money for the minor child. It was a judgment directing appellant to pay to appellee $200 per month. The plans for the care, support and education of the child, and the times during which she would spend all or any portion of the amounts awarded were left entirely to her discretion. In the case of *Hyde v. Hyde,* supra, it was said:

"Appellee rightly contends that a sum decreed to be paid to a mother for the support of a child whose custody is awarded to the mother is a distinct thing from alimony awarded to a wife in a divorce action. From this it does not follow, however, that the sum adjudged to be paid for the maintenance of a child is necessarily limited to cash outlay for bare necessities. In many instances it means the home should be maintained on an entirely different scale than as though the mother were living alone." (p. 665.)

As to the third contention, it must be said the determination of the total amount unpaid did not constitute the creation of an estate out of appellant's property. It was simply a calculation of the amount appellant had been ordered to pay in accordance with his own agreement, but which he had failed to pay and which amount was reduced to judgment. It was not the creation of an estate out of the father's property by a transfer of the father's real estate, as was declared void in *Emery v. Emery,* 104 Kan. 679, 180 Pac. 451. The judgment must be affirmed. It is so ordered.