George F. **WOOD**

v.

Frances M. **WOOD.**

Supreme Judicial Court of Maine.

Oct. 25, 1979.

Richard E. Valentino (orally), Saco, for plaintiff.

Ranger & Copeland by Orville T. Ranger (orally), Paul R. Copeland, III, Brunswick, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

GLASSMAN, Justice.

■ The appellant George Wood appeals from the judgment of the Superior Court, York County, entered on December 8, 1978, which reversed an order of the District Court, Tenth District, Division of Southern York, dated October 25, 1977, fixing arrearages in child support and granting a reduction in support payments under a divorce judgment. The appellant contends that the rule of law applied by the Superior Court—that the father is primarily liable to support his minor children—violates the Equal Protection Clause of the Fourteenth Amendment and that the District Court acted properly in altering the support decree retroactively.[1]

---

1. In a cross-appeal, the appellee Frances Wood contends that the Superior Court erred in upholding the District Court award of counsel fees. The appellee argues that the District Court judge abused his discretion under 19 M.R.S.A. § 722, empowering the divorce court to grant reasonable counsel fees in actions to enforce domestic decrees, because the award did not reasonably reflect the legal expenditures of the appellee. We are without jurisdiction to determine the propriety of this award. M.R.Civ.P. 73(a) requires that cross-appeals to the Law Court be taken within thirty days of the entry of the judgment appealed from or within fourteen days of the filing of the first notice of appeal, whichever period last expires. *Id.* This Court is without power to modify or suspend the requirements of Rule 73(a). M.R. Civ.P. 76A(c). In the instant case, the appellee filed her notice of appeal on January 19, 1979, forty-two days after entry of the Superior Court judgment on December 8, 1978 and sixteen days after entry of the appellant's notice of appeal on January 3, 1979. "Timely filing of notice of appeal in compliance with M.R.C.P. 73(a) is mandatory and jurisdictional, and if notice of appeal is not filed within the time provided, the right to appeal is lost and the

On October 17, 1975, the appellee Frances Wood was granted a divorce from the appellant George Wood. The divorce judgment incorporated by reference a property settlement agreement which provided, *inter alia,* that the appellant would pay the appellee the sum of $75.00 per week for the support of each of the two minor children in the custody of the appellee. The judgment specifically mentioned this provision and decreed that the support obligation would continue "until further Order of Court." In September of 1976, the appellee secured employment as a public school teacher. That same month the appellant unilaterally ceased making support payments, resuming payments in October at a reduced rate of $50.00 per child per week. In a document dated October 18, 1976 and filed in the District Court on November 17, 1976, the appellee brought a motion for contempt, seeking arrearages and counsel fees. In his answer and cross-motion, dated November 16, 1976 and filed on November 29, 1976, the appellant sought modification of the support payments to $50.00 weekly for each of the two children.

On October 25, 1977, the District Court, after hearing, found that the child support provision was based upon the financial status of the parties as of the date of the divorce judgment and that the relative financial circumstances had subsequently changed because the appellee was now employed as a teacher, whereas at the time of the divorce she had no income. The court concluded that this increase in the financial resources of the appellee warranted a reduction in the support obligation of the appellant. Accordingly, the District Court reduced the support payments to $50.00 per child per week, to commence on November 16, 1976, the date appearing upon the appellant's cross-motion for modification. In determining the arrearages for which execution would issue, the court only considered

unpaid installments prior to that date, fixing support arrearages at $400.00.

On appeal the Superior Court reversed the order on modification and arrearage. The court noted that the District Court order was premised not on a diminished ability by the appellant to provide a reasonable level of support but rather solely on the improved financial status of the appellee. This ground for modification, the Superior Court determined, was inconsistent with the traditional principle stated in *Pendexter v. Pendexter,* Me., 363 A.2d 743 (1976), placing the primary support obligation on the father and considering the financial status of the mother relevant only when the father is unable to provide a reasonable level of support on his own.

 It is clear to us that the Superior Court misconstrued the *Pendexter* holding.[2] As we recently emphasized in *Gardner v. Perry,* Me., 405 A.2d 721, 725 (1979), the opinion of this Court in *Pendexter* rejected the traditional rule imposing primary child support liability on the father as an outmoded distinction predicated on an archaic stereotype in which the mother played a dependent role in the allocation of family responsibilities. *Pendexter v. Pendexter, supra,* 363 A.2d at 748. Rather, the *Pendexter* Court held that

> the primary purpose of child support is the best interest and welfare of the child. Support, as every other duty arising from the relationship of parent and child, is the equal responsibility of both mother and father, to be discharged in accordance with their respective capacity and ability. *Id.* at 749.

Because the Superior Court applied an erroneous principle of law, we need not consider whether the principle it applied is an unconstitutional gender-based classification. In fashioning its modification order, the District Court properly considered the relative

appeal must be dismissed." *Kittery Electric Light Co. v. Assessors of Kittery,* Me., 219 A.2d 744, 747 (1966).

2. In the *Pendexter* case, what appeared to be the opinion of the Court was signed by only one Justice. 363 A.2d at 745. The opinion

denominated a concurring opinion was joined in by three Justices. *Id.* at 747–50. Thus, the principles enunciated in this latter opinion are controlling because only four Justices participated in the decision.

financial circumstances of both parents. We cannot say that the court abused its discretion in ordering a reduction in child support payments. *See Gardner v. Perry, supra,* 405 A.2d at 725; *Strater v. Strater,* 159 Me. 508, 519–20, 196 A.2d 94, 99–100 (1963).

Although properly reducing the support obligation of the appellant as to future payments, the District Court decreed that the order become effective as of November 16, 1976, rather than on the date of its entry, October 25, 1977. This action raises the issue whether the court had authority to reduce the support payments retroactively.

Jurisdictions differ on the question whether a divorce court has the power to order retroactive alteration of a child support order. *See generally,* H. Clark, Domestic Relations § 15.2 (1968); 24 Am. Jur.2d *Divorce and Separation* § 853 (1966); 27B C.J.S. *Divorce* § 322(1)(c) (1959); Annot., 6 A.L.R.2d 1277 (1949). Many jurisdictions hold that courts lack authority to reduce or cancel accrued child support payments on the ground that accrued installments become final judgments which cannot be modified, *e. g., Engleman v. Engleman,* 145 Colo. 299, 302, 358 P.2d 864, 866 (1961); *McPherson v. McPherson,* 153 Ohio St. 82, 91, 90 N.E.2d 675, 680 (1950); *Tente v. Tente,* 112 R.I. 636, 639, 314 A.2d 149, 151 (1974), or that support payments become vested as they accrue, *e. g., Needler v. Needler,* 131 Ill.App.2d 11, 22, 268 N.E.2d 517, 526 (1971); *McCrady v. Mahon,* 117 N.H. 762, 763, 378 A.2d 1143, 1144 (1977) (per curiam), or that statutes authorizing the modification of support orders cannot be construed as allowing the cancellation of arrearages. *E. g., Kell v. Kell,* 179 Iowa 647, 651, 161 N.W. 634, 636 (1917); *Davis v. Davis,* 145 Kan. 282, 286, 65 P.2d 562, 565 (1937); *Pishue v. Pishue,* 32 Wash.2d 750, 753, 203 P.2d 1070, 1072 (1949); *cf. Delbridge v. Sears,* 179 Iowa 526, 529–534, 160 N.W. 218, 220–21 (1916) (no power to cancel accrued alimony). Primarily as a matter of statutory construction, some courts hold

that the power of modification granted divorce courts extends not only to future child support installments but also to arrearages. *E. g., Sawyer v. Kuhnle,* 324 Mass. 53, 56, 84 N.E.2d 546, 548 (1949); *Wellman v. Wellman,* 305 Mich. 365, 371, 9 N.W.2d 579, 581 (1943); *Slep v. Slep,* 43 N.J.Super. 538, 541, 129 A.2d 317, 319 (1957); *cf. Watts v. Watts,* 314 Mass. 129, 133–34, 49 N.E.2d 609, 611–12 (1943) (cancellation of alimony arrearages). By statute, legislatures in other jurisdictions have specifically granted, *e. g.,* N.Y.Dom.Rel. Law § 240 (Consol.1979), or denied, *e. g.,* Cal.Civ.Code § 4700 (West Supp.1979), courts the power to cancel child support arrearages.

Even in jurisdictions that forbid the retroactive modification of arrearages, courts altering child support decrees generally are empowered to cancel arrearages which accrued after the filing of the motion for modification and before entry of the order. *E. g., Scott v. Scott,* 265 Ala. 208, 211, 90 So.2d 813, 815 (1956) (per curiam); *Rhodes v. Gilpin,* 264 A.2d 497, 500 (D.C.App.1970); *In re Marriage of Matzen,* 69 Ill.App.3d 69, 73, 25 Ill.Dec. 557, 560, 387 N.E.2d 14, 17 (1979); Cal.Civ.Code § 4700 (West Supp. 1979). In the instant case, the District Court apparently intended to reduce the child support obligation of the appellant as of the date of his cross-motion for modification. Although dated November 16, 1976, according to the record the motion was not filed until November 29, 1976, during which time two additional support installments accrued. Because the effective date of the order preceded the date of filing, the cancellation of the additional $100.00 of arrearage cannot be justified by reference to cases allowing post-filing cancellation under proper circumstances. Therefore, we must determine the law of Maine on the issue of retroactive modification of child support decrees.

This Court has repeatedly stated that jurisdiction over divorce and incidental relief is purely statutory.[3] The authority of

---

3. Such a conclusion is compelled by an historical inquiry into the source of judicial authority

over divorce and the orders incident to divorce. At common law no court had power to decree

the divorce court over matters of alimony, counsel fees and the custody and support of minor children "must be found in the statutes or it does not exist." *Baril v. Baril,* Me., 354 A.2d 392, 395 (1976); *Dolan v. Dolan,* Me., 259 A.2d 32, 35–36 (1969); *Belanger v. Belanger,* Me., 240 A.2d 743, 745 (1968); *Strater v. Strater,* 159 Me. 508, 510, 196 A.2d 94, 95 (1963); *Dumais v. Dumais,* 152 Me. 24, 26–27, 122 A.2d 322, 324 (1956); *White v. Shalit,* 136 Me. 65, 66–67, 1 A.2d 765, 766 (1938); *McIntire v. McIntire,* 130 Me. 326, 335, 155 A. 731, 735 (1931); *Stewart v. Stewart,* 78 Me. 548, 551, 7 A. 473, 474 (1887); *Stratton v. Stratton,* 73 Me. 481, 483 (1882); *Henderson v. Henderson,* 64 Me. 419, 421 (1875). *See generally, Opinion of the Justices,* 16 Me. 479 (1840). Although courts construing the divorce statutes properly display a special solicitude toward the minor children of divorced parents in fashioning decrees in the best interests of the children, the source of the courts' power is the statute governing divorce and not the general grant of equitable jurisdiction. *See*

*Baril v. Baril, supra,* 354 A.2d at 395; *Dumais v. Dumais, supra,* 152 Me. at 27, 122 A.2d at 324. That such decrees terminate the common law parental support obligation, substituting in its place a statutory duty to support, reinforces this conclusion. *See Mahaney v. Crocker,* 149 Me. 76, 78, 98 A.2d 728, 729 (1953); *Hall v. Green,* 87 Me. 122, 123–24, 32 A. 796, 797 (1895). The issue whether a divorce court can order retroactive modification of a child support order, therefore, must be resolved by reference to the statutory scheme governing divorce.

The authority to issue or modify child support orders incident to a divorce is given to the divorce court in 19 M.R.S.A. § 752 (Supp.1978), which provides in pertinent part: "The court making an order of nullity or of divorce may make an order concerning the care, custody and support of the minor children of the parties . . . [and] . . . may alter its order . . .

an absolute divorce. The ecclesiastical courts had exclusive jurisdiction over all matrimonial causes, but were empowered only to decree annulments and to grant divorces *a mensa et thoro*—judicial separations. 1 W. Holdsworth, A History of English Law 390–91 (1st ed. 1903). The awarding of alimony by the ecclesiastical courts and the modification, even retroactively, of such decrees followed from the subsisting marriage relationship and was consistent with an overriding purpose of promoting reconciliation. *Gloth v. Gloth,* 154 Va. 511, 537, 153 S.E. 879, 887–88 (1930). On the other hand, a divorce *a vinculo* or absolute divorce could be granted only by Parliament until 1857 when this authority, along with the jurisdiction of the ecclesiastical courts, was vested in a secular divorce court by the Matrimonial Causes Act, 1857, 20 & 21 Vict. c. 85. 15 W. Holdsworth, A History of English Law 205–06 (1965); F. Maitland & F. Montague, A Sketch of English Legal History 164 (1915). This statute also authorized the divorce court to make appropriate orders regarding alimony, custody and child support. In Maine, the legislature first gave courts jurisdiction over divorce and alimony in 1821. P.L. 1821, ch. 71. In 1841, the divorce court was initially empowered to make, and to alter upon changed circumstances, orders for the custody and support of the minor children of the parties. P.L. 1841, ch. 89.

In the absence of statute, the courts of chancery had no jurisdiction to grant divorces or to award alimony. *Bowman v. Worthington,* 24 Ark. 522, 531–34 (1867); *Mayer v. Mayer,* 154

Mich. 386, 390, 117 N.W. 890, 892 (1908); 3 Story's Equity Jurisprudence § 1860 (14th ed. 1918). Although these courts exercised jurisdiction over the custody of infants upon a showing of parental neglect or maltreatment and could decree that children be maintained out of their own property or fix parental responsibility for necessaries, the equity courts did not compel the father to provide his minor children with a reasonable level of support. *Thomasset v. Thomasset,* [1891–4] All E.R.Rep. 308, 310–11 (C.A.1894); 2 W. Nelson, Divorce and Separation §§ 981, 985 (1895); *see* 2 Kent's Commentaries on American Law 190 (3d ed. 1836); 11 Story's Commentaries on Equity §§ 1341–46 (1836). It would seem to follow, therefore, that the power of courts to dissolve a marriage and to make orders for alimony, custody and child support incident thereto is technically of statutory rather than judicial origin. *Accord, Crane v. Crane,* 45 Ill.App.2d 316, 319, 196 N.E.2d 27, 29 (1964); *Sosso v. Sosso,* 196 Neb. 242, 243, 242 N.W.2d 621, 622 (1976); *Guggenheimer v. Guggenheimer,* 99 N.H. 399, 401, 112 A.2d 61, 63 (1955); *Miller v. Miller,* 154 Ohio St. 530, 534–535, 97 N.E.2d 213, 215–16 (1951). *See generally,* 2 J. Schouler, Marriage, Divorce, Separation and Domestic Relations § 1915 (6th ed. 1921). *But see Delbridge v. Sears, supra,* 179 Iowa at 529, 160 N.W. at 220 (although power to modify is statutory, statute authorizing grant of alimony, custody and support is declaratory of common law).

from time to time as circumstances require . . . ." *Id.* In dicta, this Court has stated that in exercising these broad statutory powers, a court issuing a support order may, upon a material change of circumstances, modify the decree even retroactively. *Gardner v. Perry,* Me., 405 A.2d 721, 724 (1979); *Button v. Button,* Me., 222 A.2d 245, 247 (1966); *Wilson v. Wilson,* 143 Me. 113, 117, 56 A.2d 453, 456 (1947). *See also Mahaney v. Crocker, supra,* 149 Me. at 79, 98 A.2d at 729. Despite these dicta, the Court has never before had occasion to rule squarely on the power of a divorce court to modify a child support order retroactively so as to excuse the parent paying support from an accrued obligation.

Nothing in the statute expressly authorizes cancellation of arrearages by retroactive application of a modification order. Nor does the policy underlying the statute justify our reading into it a power to issue retroactive orders modifying support decrees. Quite the contrary. The manifest purpose of the support order is to provide for the child's welfare. The custodial parent, in planning for the care and education of the minor child, must be able to rely upon the financial assurance provided by an outstanding court order, at least until there is formal legal action seeking a modification. Absent such minimal financial certainty, there is no way the custodial parent can adequately plan to meet the needs of the minor child. *Davis v. Davis, supra,* 145 Kan. at 286, 65 P.2d at 565. In addition, construing our statute to permit retroactive modification encourages self-help rather than resort to the court. The parent paying support would be encouraged to reduce support payments unilaterally whenever he believed a change of circumstances justified a reduction. The policy of the law is to discourage self-help and to encourage resort

to the courts when modification of decrees concerning child custody and support is justified. *Gardner v. Perry, supra,* 405 A.2d at 724 n.4; *In re Marriage of Matzen, supra,* 69 Ill.App.3d at 72, 25 Ill.Dec. at 559, 387 N.E.2d at 16; *Fearon v. Fearon,* 207 Va. 927, 930, 154 S.E.2d 165, 167-68 (1967). If Section 752 can be read as authorizing retroactive modification, fairness would require that we also read into the statute a provision authorizing repayment by the custodial parent of installments already paid under an outstanding decree when that decree is retroactively modified. *Cf. Sistare v. Sistare,* 218 U.S. 1, 23, 30 S.Ct. 682, 54 L.Ed. 905 (1910) (construing state alimony statute). Moreover, if Section 752 grants courts the power to reduce accumulated arrearages, then by the same token courts may increase past-due installments, and a divorce decree may later be modified to require support payments for past years. *Davis v. Davis, supra,* 145 Kan. at 286, 65 P.2d at 565.

We do not think the legislative policy behind Section 752 contemplates such a result. That section can be construed to authorize only prospective modification of child support orders. We reject any language in prior decisions which is inconsistent with this conclusion.[4]

Two exceptions must be recognized to the rule which we now adopt. Implicit in every support order is the requirement that the funds paid to the custodial parent be expended for the support of the minor child. If the custodial parent is relieved of that obligation by the child's death, its emancipation, its achieving the age of majority, or otherwise, the parent paying support may be relieved of his obligation as of the date the custodial parent ceased providing support to the minor child.

---

4. Nothing in this opinion precludes the divorce court from refusing to use its contempt power to enforce the payment of arrearages where the obligor parent lacks present financial ability or where application of the contempt sanction would otherwise result in undue hardship. Unlike the cancellation of arrearages, such an action by the court does not excuse the underlying support obligation.

Nor should this opinion be construed as depriving the court of power, in appropriate circumstances, to give credit for direct expenditures which "serve the essential purposes of the decree." *Gardner v. Perry, supra,* 405 A.2d at 723.

This principle is consistent with a recognition that the purpose of the order is to provide support for the minor child and not a windfall to the custodial parent. *Sutherland v. Sutherland,* 77 Wash.2d 6, 8–9, 459 P.2d 397, 398–99 (1969); *see Baril v. Baril, supra,* 354 A.2d at 395–98; *McGugin v. McGugin,* 357 So.2d 347, 350 (Ala.Civ.App. 1978). A second exception is that the court may make its modification decree retroactive to the date the application for modification was filed. Under appropriate circumstances, such an order is completely consistent with the legislative purpose of Section 752. The custodial parent has been placed on notice of a potential reduction in support payments by the filing of the motion for modification. Rather than promoting self-help on the part of the parent paying support, this limited degree of retroactivity encourages that parent to seek judicial modification immediately upon an appropriate change in circumstances. Whether a modification decree should be made retroactive to the date of filing of the application for modification is a matter left to the sound discretion of the divorce court. In exercising that discretion, the court may consider whether either parent has engaged in dilatory tactics since the filing of the application; whether the obligor parent has engaged in self-help prior to filing the application by reducing the payments or by ceasing to make payments; and whether any other factor exists tending to demonstrate that such a degree of retroactivity is or is not consistent with the beneficent purposes of Section 752.

■ Applying these principles to the instant case, the District Court should have fixed the effective date of its modification order no earlier than November 29, 1976, the date of the filing of the application for modification, and should have awarded all arrearage accrued to the effective date of its modification order. Thus, the case must be remanded to the District Court so that it may fix the effective date of its modification order in accordance with the principles enunciated in this opinion and so it may award all arrearage accrued to that date.

On remand the District Court has jurisdiction to entertain a motion by the appellee for reasonable counsel fees chargeable to the appeals. *Gardner v. Perry, supra,* 405 A.2d at 726; 19 M.R.S.A. § 722 (Supp. 1978).

The entry is:

(1) The appeal from the judgment reversing the modification order is sustained in part and denied in part; to the extent that the modification order operated prospectively the judgment of the Superior Court is set aside, to the extent that the modification order operated retroactively the judgment of the Superior Court is affirmed.

(2) The appeal from the judgment fixing arrearage is denied; the judgment of the Superior Court is affirmed.

(3) The cross-appeal as to counsel fees is dismissed for lack of jurisdiction.

(4) The case is remanded to the District Court for the purpose of having it fix the effective date of its modification order and award all accrued arrearage to the effective date of its modification order.

(5) Each party is to bear its own costs on appeal.

ARCHIBALD, J., did not sit.