**Laurel B. CYR**

v.

**Peter T. CYR.**

Supreme Judicial Court of Maine.

Argued Nov. 21, 1983.

Decided Dec. 30, 1983.

Beagle & Ridge, Louise M. Poppema (orally), Portland, for plaintiff.

Goranites & Libby, Gary W. Libby (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE and SCOLNIK, JJ., and DUFRESNE, A.R.J.

VIOLETTE, Justice.

The defendant Peter Cyr appeals from an order of the Superior Court entered on his motion for clarification of the divorce decree. We agree with the defendant's contention that the court exceeded its authority in making a material change in the distribution of the marital assets. We therefore sustain the appeal.

### I.

On July 27, 1979, the Superior Court granted Laurel Cyr a divorce from Peter Cyr on the ground of irreconcilable marital differences. The divorce decree provided for the division of the parties' real and personal marital property. In pertinent part, the decree provided:

> The real estate on Saddleback Road, Baldwin, Maine, is determined to be marital property, is to be sold as soon as practicable, with the net proceeds after payment of mortgage in favor of Portland Savings Bank, and the debt owed to Alice Cyr, as well as other obligations such as taxes and expenses of sale, to be divided equally between Plaintiff and Defendant.

> • • • • •

> The antiques are determined to be marital property, with Plaintiff and Defendant each to have an equal interest therein.

> • • • • •

> The non-antique furniture and furnishings presently located at the Baldwin real estate, to include appliances, bedding, towels and utensils, are determined to be marital property, and are set aside to Plaintiff.

On June 9, 1982, Peter Cyr filed a motion for clarification of certain provisions of the decree. The motion alleged that the parties had been unable to agree on an appropriate value for the marital residence and to accomplish its sale, and that the parties had been unsuccessful in arriving at a method for division of the antiques. Specifically, Peter Cyr asked the court to establish a method to ensure the sale of the marital residence, and to clarify whether items of antique reproduction furniture were to be classified as antiques to be divided equally between the parties, or as non-antiques to be set aside to Laurel Cyr.

After a hearing on the motion, at which both Laurel Cyr and Peter Cyr testified, the Superior Court issued an order on July 29, 1982. The order initially states: "The Court considers the motion as one for modification as well as clarification." Concerning the antique and reproduction furniture, the order provides:

3. The personal property set aside to plaintiff [Laurel Cyr] was intended to be sufficient furniture and furnishings and appliances to furnish one home or apartment with three bedrooms, sufficient for plaintiff and the two minor children. All other property, including the reproduction of antiques, was the property of the parties equally.

4. The antiques and reproduction antiques, not set aside to plaintiff (see paragraph 3 above) are to be equally divided

between plaintiff and defendant within ten (10) days of the date of this Order....

The order also delineated a method, not challenged on this appeal, for the valuation and sale of the marital residence. We affirm this portion of the judgment.

## II.

Peter Cyr first contends that with respect to the division of the personal property, the 1982 order is a modification, rather than a clarification, of the terms of the 1979 decree. We agree.

The original decree provided that Laurel and Peter Cyr would share equally in the antiques. Only the "non-antique furniture and furnishings" were set aside exclusively to Laurel Cyr. Paragraphs 3 and 4 of the 1982 order clearly effectuate a change in this distribution scheme. Laurel Cyr may now be permitted to claim as many of the antiques and reproduction antiques as she deems sufficient "to furnish one home or apartment with three bedrooms." Laurel and Peter Cyr are to share equally in *only* those antiques and reproductions not used to furnish the three-bedroom dwelling in which Laurel Cyr and her two daughters are to live.

This modification in the distribution scheme is all the more significant because of the substantial number and value of the antiques and reproductions owned by the Cyrs. Submitted by Peter Cyr at the June 1979 divorce hearing, and admitted without objection, was an insurance appraisal of the antique and reproduction items valuing all the items at a grand total of $70,096.00. Included as antiques or reproductions were virtually all furniture and furnishings owned by the Cyrs. (A separate list, stipulated to by the parties, segregated the reproduction items and valued them at $6,988.00). At the divorce hearing Laurel Cyr testified:

Q. That list which I have just shown you is a list of antiques; is that correct? Are there other home fur-

nishings in the Valley Lodge that are not on that list?

A. No, not that I know of.

Q. That list includes every item in the house?

A. I believe, yes.

Q. Do you own pieces of furniture that are not antiques?

A. No. Even the bed I sleep in, the blankets I sleep under.

At the 1982 hearing on the motion to clarify, Peter Cyr testified:

Q. How many rooms of furniture did you have there?

A. Twelve, I believe.

Q. Is it fair to say that most of the furniture in those twelve rooms was antiques?

A. Yes.

Q. Did you have very much furniture that was not antique?

A. Very little.

In this situation there can be little doubt that if Laurel is free to include antiques and reproductions among the furnishings necessary to establish her three-bedroom house or apartment, Peter Cyr will not ultimately receive a one-half interest in the antiques, as the original divorce decree provided. At the 1979 hearing Laurel Cyr explained her expectations:

Q. ... You just heard my colloquy with the Court about the personal property and the furniture, right? If the house was sold and a new house or new to you was occupied under the arrangement you've described, would all of the furniture be necessary to furnish that house in your view?

A. Yes.

  ....

Q. Now, you stated that all of the items in your house are necessary to furnish the new house that you would propose be bought for you and the children?

A. Yes.

The 1982 order effectively divested Peter Cyr of his one-half interest in the

true antiques owned by the parties, awarded in the original decree, amounting to more than $31,000. This is a very substantial change in the division of the marital property, considering the total net value of the marital estate. This material change cannot be interpreted as a mere clarification of the terms of the original decree and must be viewed as an alteration of the disposition of marital property settled by the original decree. *Cf. Wardwell v. Wardwell*, 458 A.2d 750, 752 (Me.1983); *Merrill v. Merrill*, 449 A.2d 1120, 1124 (Me.1982).

### III.

Peter Cyr further contends that because neither he nor Laurel Cyr asked the court to alter, amend, or modify the original divorce decree, the court exceeded its authority in treating his motion for clarification as a motion for modification.

Recent decisions of this court have pointed out the limited jurisdiction of a divorce court to modify property division provisions of divorce decrees. In *Wardwell v. Wardwell*, 458 A.2d at 752, we stated:

> While statutory provisions relating to alimony (19 M.R.S.A. § 721) and child custody (19 M.R.S.A. § 752) expressly permit a divorce court to consider post-judgment motions for modification of an original divorce decree, the statutory provision relating to the division of marital property (19 M.R.S.A. § 722–A) contains no corresponding grant of authority. In the absence of statutory authorization to modify a judgment dividing marital property, the courts are without jurisdiction to do so.

*See also Merrill v. Merrill*, 449 A.2d at 1124; *Wood v. Wood*, 407 A.2d 282, 285–86 (Me. 1979).

█ If either party sought a modification of the division of the marital property under the 1979 decree, the appropriate procedure would be a motion for relief from judgment under M.R.Civ.P. 60(b). *Wardwell*, 458 A.2d at 752; *Merrill*, 449 A.2d at 1125.

█ At the 1982 hearing on the motion for clarification neither party claimed the 1979 decree's division of the marital property should be set aside because of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or any other reason properly sustainable under Rule 60(b). In the absence of either a motion purporting to invoke relief pursuant to Rule 60(b), or production of facts sufficient to generate consideration of Rule 60(b) relief from judgment, the divorce court may not order modification of the property division scheme of the original decree. *Wardwell*, 458 A.2d at 753.

With respect to the division of personal property, the motion for clarification asked the court only to make clear whether items of reproduction furniture and furnishings were to be classified as antiques or as non-antiques. The transcript of the July 1982 hearing on the motion reveals that when the original property division was made in 1979, there was a basic misunderstanding on this score. Peter Cyr testified:

Q. At the time that you were giving your testimony to the Court back in 1979, when you were referring to antiques in your testimony, what did you mean by that term?

A. I pretty much meant everything that was on the inventory, every item on the inventory. I was loosely using the term "antique" to describe it.

Q. By that it's fair to say that you meant to characterize all the contents of the house except the—

A. That's right.

Q. —You meant to include in that term what are now reproductions?

A. That's correct.

Laurel Cyr, on the other hand, testified to a contrary intent:

Q. —Under the divorce decree the statement, as I think you may recall, was that all non-antique furniture and furnishings located at the Baldwin real estate were marital property and to be set aside to you?

A. Yes.

Q. What was your understanding as to the reproductions?

A. They there were used furniture and they were mine.

. . . .

Q. So, Mrs. Cyr, your position as to the reproductions are that these are non-antique furniture which were set aside to you under the court decree?

A. Yes.

We have previously held that a court has the authority to make clear the meaning of a previously rendered decree where its terms are susceptible of two interpretations. *Randlett v. Randlett*, 401 A.2d 1008, 1010 (Me.1979). *See also Knight v. Knight*, 387 A.2d 603, 604–05 (Me.1978); *Boothbay Harbor Condominium I v. Whitten*, 387 A.2d 1117, 1120 (Me.1978). In *Randlett* we sanctioned the use of a declaratory judgment action to invoke the court's authority to effect the necessary clarification. 401 A.2d at 1010 n. 1. A further observation we made in *Randlett* is pertinent here:

> We note that recent decisions of this Court demonstrate that decrees attempting to regulate the future conduct of parties often reveal themselves to be susceptible to varying interpretations. Where an honest disagreement as to the meaning of a decree surfaces, the aggrieved party frequently turns to the rendering court and asks for a clarification of the decree. By doing so, the party does not seek to retry the facts of the case or to reverse the court's decision. This can only be accomplished by appeal or under M.R.Civ.P. 59. Rather, the party merely wants to know what is expected of him under the court's decree.

*Id.* at 1010.

In the present case, the original decree was ambiguous as it related to the classifi-

cation of the reproductions. The court should only have resolved this single ambiguity and should have refrained from making a material modification of the terms of the original decree.[1] We therefore vacate that part of the 1982 order concerning the personal property of the parties.

The entry is:

Amended Judgment vacated insofar as it relates to the personal property.

Amended Judgment affirmed insofar as it relates to the real property.

Remanded to the Superior Court for further proceedings consistent with this opinion.

---

1. This is the third appeal taken to the Law Court by the parties in this divorce action. We note the 1982 Order provided a method, to be used "if the parties are unable to agree," for the appraisal and sale of the marital residence. Upon remand, on further proceedings on the *motion to clarify* the term "antiques" as prayed for, we urge that the Superior Court give consideration to prescribing a similar contingent method of disposition of the antiques, so that the protracted litigation between these parties may be terminated.