MAINE SUPREME JUDICIAL COURT                                         Reporter of Decisions
Decision:      2020 ME 4
Docket:        And-19-141
Argued:        November 5, 2019
Decided:       January 7, 2020

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.*

VALERIE R. (BISHOP-MARTEL) WINN

v.

JEAN MARTEL

SAUFLEY, C.J.

[¶1]  Valerie R. Winn,[1] the mother of a child whose father is Jean Martel, appeals from a judgment of the District Court (Lewiston, *Lawrence, J.*) awarding child support to Martel's sister—the child's paternal aunt—who had been providing ongoing residence and care for the child.  The mother argues that the court erred in awarding child support, including past support, to the aunt and in its determination of the amount of the mother's gross income.  We affirm the judgment, except for its provision that the mother's child support obligation to the aunt is retroactive to a date before the divorce complaint was filed.

---

* Although Justice Hjelm participated in the appeal, he retired before this opinion was certified.

[1]  Winn's name was formerly Valerie R. Bishop-Martel, but upon entry of the divorce judgment, her name was changed to Valerie R. Winn.

## I. BACKGROUND

[¶2]  The facts are drawn from the court's supported findings and from the procedural record.  The mother and father were married in November 2010, when their child was five years old.  Several years later, beginning in July 2014, the father's sister began proving primary care for their child.[2]

[¶3]  On October 19, 2016, the paternal aunt filed a petition in the Androscoggin County Probate Court to be appointed as the guardian of the child.  Notice of the petition was served on the mother in November 2016.

[¶4]  The mother then commenced a divorce proceeding by serving a complaint on the father on February 8, 2017, and filing the complaint with the District Court within twenty days.  *See* M.R. Civ. P. 3.  The complaint alleged that the child had been residing with his paternal aunt since July 2014 and requested that the District Court determine parental rights and responsibilities for the minor child, including child support.

[¶5]  On March 7, 2017, the District Court (*Carlson, J.*) held a case management conference.  In addition to the parties, the aunt was present at the conference and indicated that she had filed a petition for guardianship of the

---

[2]  The mother testified that the child began to reside with his aunt in July 2014 so that the child could remain in the same school after his mother moved away.  The father is disabled.

minor child in the District Court.  *See* 18-A M.R.S. §§ 5-201 to 5-213 (2018).[3] The probate matter was then dismissed as duplicative.

[¶6]  In early August 2017, after a first mediation did not fully resolve the family matter, the aunt—identifying herself as "the De Facto Guardian"—filed a motion seeking, among other things, ongoing child support from the mother. The parties did not resolve the matter at a second mediation, and the court (*Martin, M.*) consolidated the aunt's guardianship petition with the divorce matter.

[¶7]  The parties participated in a judicial settlement conference in October 2017.  They reached an agreement on the record, and the court (*Ham-Thompson, M.*) directed the mother's counsel to draft the order, confirm the terms of the agreement with all parties, and present it to the court for signature.  Because the parties could not agree to the contents of the order, the court (*Lawrence, J.*) ordered all counsel to listen to the recording of the agreement as stated then by the parties and submit a final order for signature by December 15, 2017, with the magistrate (*Ham-Thompson, M.*) to resolve any remaining differences.

---

[3] Title 18-A was replaced with Title 18-C, but not until September 1, 2019, after the probate matter in this case had been concluded.  *See* P.L. 2019, ch. 417; P.L. 2017, ch. 402.

4

[¶8]  The magistrate entered the divorce judgment in January 2018.  For reasons that are not clear on the record, the magistrate accepted the parties' agreement to dismiss the aunt's petition for guardianship upon an agreement that "[the aunt] is the de facto guardian of [the child]."  The judgment ordered that the child would "continue to reside" with the aunt, and it included a provision that a final two-hour hearing regarding child support would be scheduled before a magistrate at the court's earliest convenience.[4]

[¶9]  After a hearing held by a *different* magistrate, the court (*Martin, M.*) entered an order in June 2018 determining that, because the aunt was not a guardian, and there is no legal significance to "de facto guardian" status for purposes of awarding child support in a family matter,[5] the aunt lacked the legal standing to seek or receive child support.   The father objected to the magistrate's decision, and the court (*Lawrence, J.*) entered an order in December 2018 determining that, although the magistrate correctly held that

---

[4]  The mother objected to the judgment, but the court (*Lawrence, J.*) overruled the objection and scheduled the child support hearing.

[5]  As the magistrate noted, the term "de facto guardian" as it then appeared in the guardianship statutes did not confer any legal status but instead was defined to establish a basis to seek guardianship for an individual with whom the child resided during a defined period in which there was "a demonstrated lack of consistent participation by the parent or legal custodian."  18-A M.R.S. § 5-101(1-B) (2018); *see* 18-A M.R.S. § 5-204 (2018).  The term does not appear in the current statutes, codified at Title 18-C.  *See* P.L. 2019, ch. 417; P.L. 2017, ch. 402.

the term "de facto guardian" is a term without legal significance in this context, the aunt could receive child support as a "caretaker relative" pursuant to 19-A M.R.S. § 2006(4) (2018). In addition to provisions requiring the father to pay the aunt child support, the court ordered the mother to pay the aunt as follows:

- $183 per week from November 1, 2016, to January 3, 2018; and

- $170.70 per week beginning on January 3, 2018.

[¶10] The mother moved to alter or amend the judgment in December 2018, arguing, among other things, that the court had erred in determining the amount of her gross income because a portion of the compensation she received through her contract to provide services to the United States Postal Service constituted reimbursement for the ordinary and necessary expenses of her self-employment and could not properly be treated as income for child support purposes. *See* 19-A M.R.S. § 2001(5)(C) (2018); M.R. Civ. P. 59(e). The court reconfirmed its income determination, finding that the reimbursement payments received by the mother reduced her personal living expenses. *See* 19-A M.R.S. § 2001(5)(B) (2018). The court entered a judgment correcting some clerical errors, but the child support was otherwise unchanged.

6

[¶11]   The mother timely appealed from the judgment.  *See* 14 M.R.S. § 1901 (2018); 19-A M.R.S. § 104 (2018); M.R. App. P. 2A, 2B(c)(1).

## II.  DISCUSSION

[¶12]   The mother argues that the court erred in awarding past and ongoing child support to the aunt and in its calculation of the mother's income for purposes of child support.  We discern no error in the court's determination that the mother's income included a substantial expense reimbursement from the Postal Service that reduced her personal living costs.  *See* 19-A M.R.S. § 2001(5)(A), (B) (2018); *Dostanko v. Dostanko*, 2013 ME 47, ¶ 14, 65 A.3d 1271; *Knowles v. Knowles*, 588 A.2d 315, 318 (Me. 1991).  Thus, we focus our discussion on the propriety of the court's award of child support to the aunt.

[¶13]   The mother contends that child support should not have been ordered to begin before October 2017 because the aunt had no legal status in relation to the child until the entry of the October 2017 order.[6]

---

[6]   The mother also argues that the parties had agreed to a complete judgment that did not contain an order of child support.  The court was required, however, to review the parties' proposed judgment to determine whether child support had been addressed adequately pursuant to the child support guidelines, and the court acted within its discretion in holding a hearing on child support before finalizing the judgment.  *See* 19-A M.R.S. § 2008 (2018).  Because there was no final child support judgment until after that hearing, the aunt was not required—contrary to the mother's suggestion—to file a motion to modify asserting a substantial change in circumstances to obtain child support.  *See* 19-A M.R.S. § 2009(2) (2018); *McCarthy v. Goroshin*, 2016 ME 98, ¶ 15, 143 A.3d 138.

[¶14] When a caretaker relative provides primary residence for a child, "[b]oth parents are responsible for child support." 19-A M.R.S. § 2006(4). "In an action filed under section 1654 ['Parenting and support when parents live apart'], the court may require the child's nonprimary care provider to pay past support." 19-A M.R.S. § 1653(8)(A) (2018). By statute, the child support guidelines apply to an award of past support. *See id.*; *see also* 19-A M.R.S. § 2006(2) (2018). Past support "is calculated by applying the current support guidelines to the period for which past support is owed." *Id.* § 2006(2).

[¶15] Here, the magistrate who initially considered whether the aunt was entitled to child support (*Martin, M.*) correctly concluded that the aunt's agreed-to status as a "de facto guardian" did not entitle the aunt to receive child support based on Maine law. *See supra* n.5. The aunt had filed guardianship petitions in two separate courts, and she was therefore aware of what was necessary to be treated as a legal guardian and receive child support in that capacity. *See* 18-A M.R.S. § 5-204. Her agreement to dismiss the guardianship petition and accept a judgment stating that she was a "de facto guardian" left her without the legal status of a guardian.

[¶16] The District Court (*Lawrence, J.*) was also correct, however, in determining that 19-A M.R.S. § 2006(4) authorizes the aunt to receive child

support as a caretaker relative. Because there has never been any dispute that the aunt began to provide primary care for the child in July 2014, the court properly recognized the aunt as a caretaker relative who was entitled to receive child support. *See* 19-A M.R.S. § 2006(4).

[¶17]  In determining the amount of support to be paid by the mother and father to the aunt as the caretaker relative, the benefits received by the child through Social Security were not attributable to the mother but rather to the disabled father. *See* 19-A M.R.S. § 2107 (2018). After an evidentiary hearing, the court found that the mother had stopped paying the aunt any child support after the aunt became the child's representative payee for the Social Security benefits arising from *the father's* disability. Given that supported finding and the aunt's ongoing responsibility for the child pursuant to the divorce judgment, the court did not err or abuse its discretion in determining that it would be in the child's best interest to order the mother to pay child support, including past support, to the aunt.

[¶18]  The court established the start date for past support as November 1, 2016—the approximate date when the aunt petitioned for guardianship in the Probate Court. The aunt did not, however, ever become a legally recognized guardian for the child, either in the Probate Court or the

District Court. As a caretaker relative, it was only on February 8, 2017, when the mother commenced the divorce proceeding by service of process, that the aunt became eligible to receive child support. *See* M.R. Civ. P. 3; *cf. Wood v. Wood*, 407 A.2d 282, 287-88 (Me. 1979) (holding, before the enactment of 19-A M.R.S. § 2009(2), that a modification of support may be retroactive only to the initiation of the motion to modify).

[¶19] Accordingly, we must vacate that portion of the judgment that establishes a November 1, 2016, start date for the mother's past support obligation to the aunt and remand the matter for the court to enter an order establishing February 8, 2017, as the start date for that past support.

The entry is:

> Judgment affirmed, except that the child support order is vacated to the extent that it establishes November 1, 2016, as the start date for the award of past support from the mother to the aunt. Remanded for the court to establish February 8, 2017, as that start date.

Thaddeus V. Day, Esq. (orally), Law Offices of Thaddeus V. Day, P.L.L.C., Cumberland Center, for appellant Valerie R. Winn

Joan Egdall, Esq. (orally), Gosselin & Dubord, P.A., Lewiston, for appellee Jean Martel

Lewiston District Court docket number FM-2017-92
FOR CLERK REFERENCE ONLY